In re Melvin E. HESTER & Delores E. Hester, Debtors.

Melvin E. HESTER & Delores E. Hester, Plaintiffs,

v.

Melba L. POWELL, Tax Commissioner of Walker County, Georgia, Defendant.

Bankruptcy No. 1–81–02338.
Adv. No. 1–86–0043.

United States Bankruptcy Court, E.D. Tennessee.

Aug. 5, 1986.

Robert J. Harriss, Harriss, Hartman, Aaron, Townley & Wharton, P.C., Rossville, Ga., for plaintiffs.

M. Patrick Woodard, Jr., Jahn & Jahn, Chattanooga, Tenn., for defendant.

RALPH H. KELLEY, Bankruptcy Judge.

The plaintiffs brought this suit to determine whether a debt to the defendant for county real property taxes was discharged in their chapter 13 case. The facts are undisputed.

The plaintiffs (debtors) filed their chapter 13 case in 1981, and their chapter 13 plan was confirmed. The plan provided that claims entitled to priority under Bankruptcy Code § 507 would be paid in full. 11 U.S.C. § 507 (1983). This provision is required in order for a plan to be confirmed. 11 U.S.C. § 1322(a)(2) (1983).

The debtors failed to pay their real property taxes in 1982 and 1983. They filed amendments to their schedules in 1982 and 1983 to add the postpetition taxes to their chapter 13 plan. The defendant was given notice of the amendments but did not file a proof of claim for any of the taxes.

The debtors' chapter 13 plan was modified several times after the amendments, but at all times provided for full payment of claims entitled to priority under § 507. The defendant was given notice of the modified plans.

On May 8, 1985, the debtors received a discharge of their debts after completion of their chapter 13 plan. The defendant did not receive any payments on the postpetition taxes because no proof of claim was filed.

The defendant thereafter sought to collect the postpetition taxes and the debtors brought this suit to determine whether the debt was discharged.

*Discussion*

The court is not certain, but the defendant seems to argue that the real property taxes in question were not affected by the debtors' chapter 13 case because the taxes were not a "claim" or "debt" under the bankruptcy law. 11 U.S.C. § 101(4), (11) (1983). Not every peculiarity or technicality of state law is controlling in deciding what is a "debt" or "claim" under the Bankruptcy Code's definitions. *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83

L.Ed.2d 649, 12 Bankr.Ct.Dec. 541, 11 Coll. Bankr.Cas.2d 1067 (1985); *In re Edge*, 60 B.R. 690 (Bankr.M.D.Tenn.1986). The defendant admits that the taxes are within those definitions by admitting that they are collectible from the debtors. As a practical matter, real property taxes are a debt owed by the property owner and are routinely treated as such in bankruptcy cases.

■ A bankruptcy case under chapter 7 or chapter 13 of the Code does not, as a general rule, affect a postpetition claim. 11 U.S.C. §§ 101(9), 501(a), 502 & 103(a) (1983). Chapter 13, however, makes an exception to this rule for postpetition tax claims such as the defendant's claim. Sections 1305(a)(1) and 1322(b)(6) mean that the chapter 13 plan can provide for payment of postpetition tax claims. 11 U.S.C. §§ 1305(a)(1) & 1322(b)(6) (1983). The debtors' plan provided for the defendant's claim in the sense that, if the defendant had filed a proof of claim, the claim could have been allowed and paid in full as a priority claim. 11 U.S.C. § 1305(b) (1983).

This brings the court to the main question. The debtors argue that the defendant's claim was discharged without payment under the rule of *In re Richards*, 50 B.R. 339 (E.D.Tenn.1985).

In that case, the IRS had a claim for prepetition income taxes. The claim would have been paid in full as provided in the chapter 13 plan, if the claim had been allowed. The IRS, however, filed its proof of claim after the deadline, the debtor objected, and the claim was disallowed. The debtor completed the plan and received a discharge under § 1328(a). When the IRS tried to collect, the debtor brought suit. The court held that the debt had been discharged.

The result clearly followed from § 1328(a). 11 U.S.C. § 1328(a) (1983). Unlike other discharges, the discharge under § 1328(a) does not specifically except any taxes from discharge. 11 U.S.C. §§ 523(a), 727, 1141(d)(2) & 1328(b) (1983). They are discharged if provided for in the plan or if the claim is disallowed. Obviously, a disallowed claim will not be paid. Being provid-

ed for in the plan also does not mean that a claim will be paid. That depends on whether the creditor files a timely proof of claim so that its claim will be allowed. If the creditor does not do so, the statute does not say that the claim will not be discharged. Chapter 13 would hardly be worth the effort for debtors if that were the rule. The Code adopts the opposite rule that failure to be paid because of failure to file a timely proof of claim does not prevent the debt from being discharged. The debtor has done all that is required by providing for the claim in the plan, having the plan confirmed, and completing it. He is not penalized because the creditor's failure to file a timely proof of claim prevented it from being paid.

This result also follows the general rule that the purpose of filing a proof of claim is to establish a right to payment from the bankruptcy estate and is irrelevant to the dischargeability of a debt. 11 U.S.C. §§ 523, 727(b), 1141(d) & 1328(a), (b) (1983).

The defendant argues that the rule of the *Richards* case does not apply to a postpetition tax claim. According to the defendant, the holder of a postpetition tax claim can decline to accept payment under the plan by not filing a proof of claim, and the debt will not be discharged under § 1328(a).

This was the rule under the prior law— specifically § 680 of the Bankruptcy Act of 1898. 11 U.S.C. § 1080 (1978). It provided:

Any provision in this chapter to the contrary notwithstanding, all taxes which may be found to be owing to the United States or any State from a debtor within one year from the date of the filing of a petition under this chapter, and have not been assessed prior to the date of the confirmation of a plan under this chapter, and all taxes which may become owing to the United States or any State from a debtor shall be assessed against, may be collected from, and shall be paid by the debtor; *Provided, however,* That the United States or

any State may in writing accept the provisions of any plan dealing with the assumption, settlement, or payment of any such tax.

This statute was interpreted to mean that such taxes were not discharged if the taxing authority elected not to accept payment as provided in the chapter 13 plan. *In re Gates*, 256 F.Supp. 1. (E.D.Wis.1966).

There is no such statute in current chapter 13. Equivalent statutes were deleted from draft versions of present chapter 13 shortly before it was passed by Congress. H.R. 8200, 95th Cong., 1st Sess. Title II § 1331 (Sept. 8, 1977); S.2266, 95th Cong., 2d Sess. Title II, § 1331 (Sept. 7, 1978); S.Rep. 1106, 95th Cong., 2d Sess. 30 (1978); 124 Cong.Rec. H.11115 (daily ed. Sept. 28, 1978) (Rep. Edwards); S.17432 (daily ed. Oct. 6, 1978) (Sen. DeConcini); reprinted in L. King, Collier on Bankruptcy, Appendix 3 (15th Ed. 1985).

The explanation of why proposed § 1331 was deleted is confusing.

> Section 1331 ... and the comparable provisions ... of the Senate amendment, pertaining to assessment and collection of taxes in wage-earner plans, are deleted, and the governing rule is placed in section 505(c) of the House amendment. The provisions of both bills allowing assessment and collection of taxes after confirmation of the wage-earner plan are modified to allow assessment and collection after the court fixes the fact and amount of a tax liability, including administrative period taxes, regardless of whether this occurs before or after confirmation of the plan. The provision of the House bill limiting the collection of taxes to those assessed before one year after the filing of the petition is eliminated, thereby leaving the period of limitations on assessment of these nondischargeable tax liabilities the usual period provided by the Internal Revenue Code.

Section 505(c) only provides for assessment of a tax after liability and amount have been determined. Unlike proposed § 1331 it does not say that the tax can be collected or that the taxing authority can elect to be paid under the plan or not. Thus, § 505(c) does not by itself have the same effect as proposed § 1331. Whatever confused reasons Congress had for deleting proposed § 1331, Congress did delete it. This is evidence that Congress did not intend to continue the law as it was under § 680 of the Bankruptcy Act and would have been under proposed § 1331.

The defendant argues that § 1305(a)(1) adopts the prior law by saying that the holder of an allowable postpetition claim "may" file a proof of claim. The court does not agree.

■ In any case, a creditor "may" file a proof of claim. Section 502 is the general provision that applies to prepetition claims in all bankruptcy cases. It applied to the IRS's claim in the *Richards* case. It also says that a creditor "may" file a proof of claim. 11 U.S.C. § 502(a) (1983). The statutes could not compel a creditor to file a proof of claim by simply saying "shall" rather than "may". They leave the decision to the creditor according to the consequences of filing or not. The only consequence may be that the creditor will receive a payment from the bankruptcy estate, but the statutes do not say that the creditor must file. If it doesn't want to be paid, it need not file. This is compulsion of a practical kind, rather than mere words. There are other consequences to be considered that may lead a creditor not to file a proof of claim. 11 U.S.C. § 502(d) (1983). The word "may" in § 1305 only reflects this general rule that a creditor must decide whether to file according to the consequences. It does not mean that a creditor can save its claim from discharge by not filing a proof of claim.

The best support for the defendant's argument is § 1322(b)(6). It sets out the general rules on what a chapter 13 plan must and may provide as to various kinds of claims. It refers simply to claims in every provision but § 1322(b)(6). Section 1322(b)(6) says that "the plan may provide for the payment of all or any part of any claim *allowed* under section 1305...." 11 U.S.C. § 1322(b)(6) (1983) (emphasis added).

This appears to mean that the plan cannot provide for such a claim unless it is allowed. Allowance requires the filing of a proof of claim. 11 U.S.C. §§ 1305(b) & 502(a) (1983). If this is true, the defendant's claim should not be discharged under § 1328(a), either as a claim provided for in the plan or a claim disallowed for failure to file a proof of claim.

The court has not found any legislative history explaining why § 1322(b)(6) refers to "allowed" postpetition claims rather than simply postpetition claims. Collier on Bankruptcy, however, agrees with the view that a postpetition claim is discharged under § 1328(a) only if the claim is provided for in the plan and is in fact allowed.

> Debts incurred by the chapter 13 debtor after the commencement of the case and not provided for by the plan are not discharged under section 1328(a). Postpetition debts *allowed* under sections 502(a) and (b) and 1305(a), (b) and (c) [and] provided for under the plan as permitted by section 1322(b)(6) are discharged under section 1328(a), unless the debt is based on a consumer debt claim under section 1305(a)(2) incurred by the debtor without the prior approval of the chapter 13 trustee, where obtaining of such approval was practicable.

5 L. King, Collier on Bankruptcy ¶ 1328.-01 at 1328–6 (15th ed. 1985) (emphasis added)

In discussing § 1305, Collier gives the same answer.

> There is no requirement that the holder file a proof of a postpetition claim under section 1305. The congressional purpose behind section 1305 is to permit the same treatment of certain postpetition credit extended to the chapter 13 debtor as for a prepetition claim for purposes of proof, allowance, and priority. The holder of such a postpetition claim may refrain from filing proof of the postpetition claim, thereby waiving the right to distribution under the chapter 13 plan, in hopes of recovering against the debtor

after the closing of the case. A discharge granted in a chapter 13 case would not relieve the debtor of liability on a postpetition claim, unless the debt had been provided for by the plan....

> [A]—Dischargeability of Postpetition Claims Allowed Under Section 1305(b)

> In a chapter 13 case in which the debtor does not satisfy allowed claims in full, including postpetition claims allowed under section 1305(b), the question arises as to whether the chapter 13 discharge would relieve the debtor of liability for the unpaid balance of an allowed postpetition claim

> ....

> (i) Scope of the Chapter 13 Discharge; § 1328

> The scope of a chapter 13 discharge in relation to allowed postpetition claims depends upon whether the claim is held to be a *debt provided for by the plan*. A plan requiring that notice be given any holder of a section 1305 postpetition claim in time to permit its proof and allowance and proposing appropriate payment of allowed postpetition claims would satisfy the requirement that the debt be *provided for by the plan*, thereby bringing such claims within *the scope* of a section 1328 discharge.

5 L. King, Collier on Bankruptcy § 1305.-01 at 1305–3, 4 (15th ed. 1985).

This discussion of § 1305 appears to be confusing but is not because it deals with the effect of a discharge on an *allowed* postpetition claim.

■ The debtors took the usual steps to make their chapter 13 plan provide for the defendant's claim, but § 1322(b)(6) means that the plan could not or did not provide for the claim because the defendant's failure to file a proof of claim prevented the claim from being allowed. As a result, the claim was not discharged under § 1328(a) as one provided for in the plan and should not be discharged as a claim that was disallowed for failure to file a proof of claim.

The court admits that this reasoning is doubletalk as to the meaning of "provided for in the plan". A claim is provided for in the plan if the plan provides for payment in some manner. The defendant's claim was provided for in that sense. What § 1322(b)(6) means is that a postpetition claim that is provided for in the plan can be discharged only by payment as provided in the plan. Payment depends on whether the creditor files a proof of claim so that the claim will be allowed. Since postpetition taxes generally must be paid in full in order for a plan to be confirmed, this means that postpetition taxes can be discharged only by payment in full. Simply including them in the plan is not enough; they must also be paid.

This result is opposite to the court's conclusion in *In re Richards*, but that case dealt with prepetition taxes. They can be discharged without payment if the creditor fails to file a timely proof of claim. Postpetition taxes, such as the debt owed the defendant, are discharged only if the claim is allowed and paid. Thus, the defendant's claim was not discharged.

This conclusion agrees with what Congress thought it was doing when it deleted proposed § 1331 of the Code. Furthermore, the Code is the product of generally careful drafting by congressional staff and members of Congress. The court does not believe that the word "allowed" was placed in § 1322(b)(6) by accident or mistake.

Judge Anderson of the Western District of Virginia has reached the same conclusion as to the effect of §§ 1305, 1322(b)(6), and 1328(a). *In re Pritchett*, 55 B.R. 557 (Bankr.W.D.Va.1985).

The defendant has raised another argument regarding the effect of discharge of a tax debt on the lien securing it. Since the debt was not discharged, the argument need not be addressed.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.