**In re Jacob F. BUTCHER, a/k/a Jake F. Butcher, Jake Butcher and JFB Petroleum & Land Company, Inc., Debtor.**

**Bankruptcy No. 3-83-01036.**

United States Bankruptcy Court, E.D. Tennessee.

April 29, 1987.

Bass, Berry & Sims, J.O. Bass, Jr., Richard H. Barry, Nashville, Tenn., for trustee.

John W. Gill, Jr., U.S. Atty., Knoxville, Tenn., Gregory L. Nelson, Paul M. Predmore, Dept. of Justice, Washington, D.C., for U.S. and I.R.S.

### MEMORANDUM ON TRUSTEE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON OBJECTION TO AMENDED PROOF OF CLAIM OF THE INTERNAL REVENUE SERVICE

RICHARD STAIR, Jr., Bankruptcy Judge.

On March 20, 1986, John H. Bailey, III, trustee of the debtor's estate, filed an "Objection To Internal Revenue Service Proofs Of Claim." The trustee's objection is twofold. First, he contends that a proof of claim filed by the Internal Revenue Service (IRS) on October 18, 1985 (Claim No. 90), amending and superseding three previously filed proofs of claim, is not timely filed and should be disallowed. Secondly, the trustee contends that Claim No. 90 should be

subordinated to the claims of other creditors on "principles of equitable subordination and constructive trust."

Contemporaneously with the filing of his objections to Claim No. 90, the trustee filed a motion seeking a partial summary judgment disallowing Claim No. 90 on the ground that the claim is not timely filed.[1] Alternatively, the trustee asks the court to order a separate trial of the issue of whether Claim No. 90 should be disallowed as late filed.[2]

On April 10, 1986, the United States filed its response. While the United States opposes entry of a partial summary judgment, it agrees with the trustee that the facts necessary to a resolution of the issue are undisputed.

1. Objections to claims are contested matters governed by Bankruptcy Rules 3007 and 9014. Bankruptcy Rule 9014 provides in material part:

> In a contested matter in a case under the Code not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. .... [U]nless the court otherwise directs, the following rules shall apply: ... 7056....

Bankruptcy Rule 7056 adopts Fed.R.Civ.P. 56, which provides in material part:

> (c) *Motion and Proceedings thereon*
> The motion shall be served at least 10 days before the time fixed for the hearing. .... The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

2. Assuming arguendo the correctness of the trustee's contention that the amended claim of October 18, 1985, is late filed, his argument that the claim should be disallowed on that basis is inconsistent with the provisions of Bankruptcy Code § 726, which provides in part:

> *Distribution of property of the estate*
> (a) Except as provided in section 510 of this title, property of the estate shall be distributed—
> (1) first, in payment of claims of the kind specified in, and in the order specified in, section 507 of this title;
> (2) second, in payment of any allowed unsecured claim, other than a claim of a kind specified in paragraph (1), (3), or (4) [not material herein as to (1) or (4)] of this subsection, proof of which is—

This is a core proceeding. 28 U.S.C.A. § 157(b)(2)(B) (West Supp.1987).

## I

An order granting relief under Chapter 7 of Title 11 of the United States Code was entered against the debtor, Jacob F. Butcher, on August 22, 1983.[3] By an order of this court entered on September 7, 1983, the date fixed for the meeting of creditors pursuant to 11 U.S.C.A. § 341(a) (West 1979) was September 27, 1983. The time for filing claims under Bankruptcy Rule 3002(c) was fixed as December 27, 1983. No motion seeking an extension of the 90-day bar date was filed by the United States.[4]

> (A) timely filed under section 501(a) of this title;
> (B) timely filed under section 501(b) or 501(c) of this title; or
> (C) tardily filed under section 501(a) of this title, if—
> (i) the creditor that holds such claim did not have notice or actual knowledge of the case in time for timely filing of a proof of such claim under section 501(a) of this title; and
> (ii) proof of such claim is filed in time to permit payment of such claim;
> (3) *third, in payment of any allowed unsecured claim proof of which is tardily filed* under section 501(a) of this title, other than a claim of the kind specified in paragraph (2)(C) of this subsection;
> ....

11 U.S.C.A. § 726(a) (West 1979) (emphasis added).

Under the distribution scenario outlined above, should Claim No. 90 be disallowed as untimely filed, it could nonetheless be allowed as tardily filed, with payment of a dividend subordinated to those claims higher in the § 726(a) distribution scheme.

3. The debtor's case was commenced by the filing of an involuntary petition under 11 U.S.C.A. § 303 (West 1979) on June 29, 1983.

4. Bankruptcy Rule 3002 provides in material part:

> *Filing Proof of Claim or Interest*
> ....
> (c) *Time for filing.* In a chapter 7 liquidation or chapter 13 individual's debt adjustment case, a proof of claim shall be filed within 90 days after the first date set for the meeting of creditors called pursuant to § 341(a) of the Code, except as follows:
> (1) On motion of the United States ... before the expiration of such period and for

The IRS filed three proofs of claim prior to the December 27, 1983, bar date. All three claims were filed as unsecured priority claims under 11 U.S.C.A. § 507(a)(6) (West 1979).[5] The last of these claims (Claim No. 50), dated December 21, 1983, was filed on December 23, 1983, in the amount of $1,903,365.39.[6] Claim No. 50 amended and superseded proofs of claim filed by the IRS on November 22, 1983 (Claim No. 24), in the amount of $1,892,956.75 and on November 30, 1983 (Claim No. 27), in the amount of $1,893,372.42.[7]

On October 18, 1985, twenty-six months after the entry of the order for relief against the debtor under Chapter 7, and nearly twenty-two months after expiration of the December 27, 1983, bar date for filing claims, the IRS filed Claim No. 90 in the amount of $20,343,568.07. Claim No. 90 asserts that it is filed as "Amended Claim # 4 to update previously filed claims dated 11–08–83, 11–25–83 and 12–21–83." [8] Of the total amount of this claim, $5,059,057.39 is attributable to penalties to the date of the petition and is thus not accorded priority status. (See footnote 6.) Through Claim No. 90, the IRS has increased its unsecured priority claim against the debtor's estate by $13,383,471.26.

## II

Claim No. 50 fixes the debtor's liability to the IRS at $1,901,039.42, excluding penalties of $2,325.97. Claim No. 50 as filed on December 23, 1983, is itemized as follows:

| Kind Of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest To Petition Date |
|---|---|---|---|---|
| Income | 1976 | UNASSESSED | $370,018.96 | $280,761.33 |
| Income | 1977 | UNASSESSED | 420,601.97 | 287,710.44 |
| Income | 1978 | UNASSESSED | 206,297.23 | 127,501.07 |
| Income | 1979 | UNASSESSED | 130,036.93 | 70.028.82 |
| WH/FICA | 1981 (4Q) | 04–26–82 | 214.56 | 107.14 |
| Agricultural | 1981 | 03–29–82 | 44.57 | 13.42 |
| WH/FICA | 1981 (1Q) | 06–27–83 | 815.62 | 332.91 |
| WH/FICA | 1981 (2Q) | 06–27–83 | 942.90 | 353.23 |
| WH/FICA | 1981 (3Q) | 06–27–83 | 1,155.00 | 393.96 |
| WH/FICA | 1981 (4Q) | 06–27–83 | 802.36 | 246.78 |
| WH/FICA | 1982 (1Q) | 06–27–83 | 1,112.89 | 282.30 |
| WH/FICA | 1981 (3Q) [9] | 08–22–83 | 1,097.64 | 150.10 |
| WH/FICA | 1982 (4Q) | 06–27–83 | –0– | 17.29 |

cause shown, the court may extend the time for filing of a claim by the United States.... Fed.R.Bankr.P. 3002.

**5.** Under the Bankruptcy Amendments and Federal Judgeship Act of 1984, P.L. No. 98–353, paragraph (6) of § 507(a) of title 11 was redesignated as paragraph (7).

**6.** Of this amount, $2,325.97 is attributable to a penalty to the date of petition and is thus not accorded priority status. Section 507(a)(7)(G) (formerly § 507(a)(6)(G)) of the Bankruptcy Code, as amended by the Bankruptcy Amendments and Federal Judgeship Act of 1984, provides:

(a) The following expenses and claims have priority in the following order:

. . . . .

(7) Seventh, allowed unsecured claims of governmental units, only to the extent that such claims are for—

. . . .

(G) a penalty related to a claim of a kind specified in this paragraph *and in compensation for actual pecuniary loss.*

11 U.S.C.A. § 507(a) (West Supp.1987) (emphasis added).

**7.** Claim No. 27 provides that it is filed as "Amended Claim # 1 to add 941 liability. This claim supersedes Form 6338 dated 11–08–83 [Claim No. 24]." Claim No. 50 provides that it is filed as "Amended Claim # 2 to add additional 941 liability. This claim supersedes Form 6338 dated 11–25–83 [Claim No. 27]."

**8.** Four claims have been filed by the IRS, three of which are designated as amended claims. Claim No. 90, while representing the fourth claim, is the third amendment.

**9.** Claim No. 50 reflects 3Q WH/FICA for 1981 in two instances.

Claim No. 90 fixes the debtor's liability to the IRS at $15,284,510.68, excluding penalties of $5,059,057.39. Claim No. 90 is itemized as follows:

| Kind Of Tax | Tax Period | | Date Tax Assessed | Tax Due | Interest To Petition Date |
|---|---|---|---|---|---|
| Income | 1976 | | UNASSESSED | $ 370,018.96 | $ 280,761.33 |
| Income | 1977 | | UNASSESSED | 420,601.97 | 287,710.44 |
| Income | 1978 | | UNASSESSED | 2,391,866.10 | 1,478,281.94 |
| Income | 1979 | | UNASSESSED | 181,540.78 | 97,765.19 |
| Income | 1980 | | UNASSESSED | 1,950,507.00 | 792,943.89 |
| Income | 1981 | | UNASSESSED | 5,589,621.00 | 1,434,818.60 |
| WH/FICA | 1981 | (1Q) | 06–27–83 | 815.62 | 332.91 |
| WH/FICA | 1981 | (2Q) | 06–27–83 | 942.90 | 353.24 |
| WH/FICA | 1981 | (3Q) | 06–27–83 | 1,155.00 | 393.96 |
| WH/FICA | 1981 | (4Q) | 06–27–83 | 1,172.85 | 246.78 |
| WH/FICA | 1982 | (1Q) | 06–27–83 | 1,112.89 | 282.30 |
| WH/FICA | 1982 | (3Q) | 08–22–83 | 1,097.64 | 150.10 |
| WH/FICA | 1982 | (4Q) | 06–27–83 | 0.00 | 17.29 |

Filed in support of the trustee's motion for partial summary judgment is an affidavit of the trustee identifying true copies of statutory notices of deficiency the IRS relies upon in support of the income tax portion of both Claims No. 50 and 90.[10] An analysis of the two claims utilizing the statutory notices of deficiency,[11] attached as exhibits to the trustee's affidavit, reflects the following undisputed facts:

The IRS bases its December 23, 1983, claim against the debtor of $1,901,039.42 (excluding penalties of $2,325.97), represented by Claim No. 50, on the following tax obligations:

(A) Income taxes for 1976, 1977, 1978, and 1979, totaling $1,892,956.75, including taxes due and interest to petition date. All of the debtor's income tax liability giving rise to this claim is based upon the disallowance of interest deductions claimed by the debtor as business expenses and reclassified by the IRS as nondeductible investment interest.

(B) Agricultural taxes for 1981 totaling $57.99, including taxes due and interest to petition date.

(C) Withholding and FICA taxes for 1981 and 1982 totaling $8,024.68, including taxes due and interest to petition date.

Claim No. 90, filed on October 18, 1985, increases the IRS claim against the debtor by $13,383,471.26 (excluding penalties totaling $5,059,057.39). This increase in liability is based upon the following additional tax obligations [12] determined by the IRS to be due from the debtor:

(A) Additional income taxes for 1978 and 1979 totaling $3,615,589.96, including taxes due and interest to petition date. This increase in liability is predicated wholly upon an IRS claim of fraud by the debtor in failing to report income for these taxable years.

10. The debtor and his wife, Sonya Butcher, filed joint tax returns during the years in question. All notices of deficiency, with one exception, are thus jointly addressed to the debtor and Mrs. Butcher. The basis for the adjustments in liability made by the IRS are, however, not in all respects grounded upon actions imputed to Mrs. Butcher.

11. Each notice of deficiency annexed to the trustee's affidavit contains only the amount of the debtor's income tax deficiency for the year in question. No interest figures are reflected.

The court is including interest in those amounts set forth in Claims No. 50 and 90 to reflect the total adjustments made by the IRS through the filing of Claim No. 90.

12. The IRS sent the debtor a notice of deficiency dated February 20, 1986, for the tax year ending December 31, 1982. The notice reflects an increase in tax of $11,622,592.00 for 1982, excluding penalties. No claim has been made by the IRS against the estate for the 1982 increase in taxes and penalties.

(B) Income taxes for 1980 and 1981 totaling $9,767,890.49, including taxes due and interest to petition date. No liability was asserted for income taxes for these two years by the IRS in Claim No. 50. The liability is attributable primarily to a theory of fraud on the part of the debtor for his alleged failure to report income. A small portion of this tax deficiency relates to a reclassification of interest deductions claimed by the debtor as business expenses to nondeductible investment interest and, with respect to the 1981 liability, a reclassification of a bad debt deduction taken by the debtor.

(C) Additional withholding and FICA taxes for 1981 totaling $48.80.[13]

### III

The issue raised by the trustee's motion for partial summary judgment involves the effect to be given Claim No. 90, filed by the IRS as an amended claim almost twenty-two months after the bar date for filing claims. Succinctly stated, does Claim No. 90 relate back to the previously filed Claim No. 50, thus permitting it the status of a timely filed claim, or is Claim No. 90 a tardily filed claim?

At least two United States circuit courts of appeal and several bankruptcy courts have wrestled with the issue of late filed amended claims by the IRS. As might be expected, the results differ from case to case, as do the factual circumstances surrounding each decision. See *United States v. International Horizons, Inc.*, 751 F.2d 1213 (11th Cir.1985) (where IRS timely filed claim for FICA and withholding taxes, an amended claim for corporate income taxes, filed after the bar date, was assertion of new claim and disallowed); *In re Owens*, 67 B.R. 418 (Bankr.E.D.Pa.1987) (amended claim for income tax delinquencies filed subsequent to bar date disallowed due to failure of IRS to seek an extension of the bar date pursuant to Fed.R.Bankr.P.

3002(c)(1) where IRS knew prior to the bar date that debtor's taxes were delinquent). *Contra Menick v. Hoffman*, 205 F.2d 365 (9th Cir.1953) (amendment permitted after bar date to add claim for bankrupt's personal income taxes where timely filed claim related to FICA and withholding taxes as both claims were "demands of the same generic origin."); *Matter of Johnson*, 55 B.R. 800 (Bankr.E.D.Va.1985) (two amendments, filed beyond bar date, to timely filed IRS claim allowed because all three claims originate out of the same course of conduct and activity of the bankrupt); *In re Simms*, 40 B.R. 186 (Bankr.N.D.Ga.1984) (untimely filed "Supplemental Claim" asserting federal income tax liability for different years than were asserted in timely filed claim "should relate back" to the timely filed claim); *Matter of Saxe*, 14 B.R. 161 (Bankr.S.D.N.Y.1981) (original and amended proofs of claim were for personal income taxes and are thus demands of same generic origin and amended claim should therefore be allowed under the rationale of *Menick v. Hoffman*).[14]

The United States Court of Appeals for the Sixth Circuit addressed the issue many years ago in a non-tax context. *Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228 (6th Cir.1947) (creditor originally proving claim as unsecured permitted post bar date amendment changing claim to secured). In its decision the Sixth Circuit observed in material part:

> Amendments of proofs of claim in bankruptcy to correct defects or mistakes are liberally allowed where, no fraud appearing, the mistake was made through ignorance of law or fact and substantial justice requires that the amendment should be allowed.....
>
> As was said by Judge Patterson: "Amendments to claims in bankruptcy are freely allowed where the purpose is to cure defects in the claim originally filed, to supply greater particularity to the claim, or even to plead a new theory

---

**13.** A summation of these figures totals $13,383,-529.25. This sum is $57.99 higher than the $13,383,471.26 difference in Claims No. 50 and 90. This difference is attributable to the 1981 agricultural tax of $57.99 asserted by the IRS in

Claim No. 50 which is not perpetuated in Claim No. 90.

**14.** The cases cited are merely representative; there are numerous other reported opinions.

on facts already given in the claim. They are not permitted where the effort is to substitute an entirely different cause of action after the time for filing claims has expired....." *In re Fiegel, Bankrupt,* D.C. [S.D.] N.Y., 22 F.Supp. 364, 365.

*In re Meade Tool & Die Co.,* 164 F.2d at 230.

Both the trustee and the United States rely upon *In re Miss Glamour Coat Co.,* Stand.Fed.Tax Rep. (CCH) ¶ 9737 (S.D.N.Y. 1980), which suggests consideration of five (5) factors in determining whether amendments to claims should be allowed:

(1) Whether the bankrupt and creditors relied upon the IRS earlier proofs of claim or whether they had reason to know that subsequent proofs of claim would follow pending the completion of the audit.

(2) Whether the other creditors would receive a windfall to which they are not entitled on the merits by the court not allowing an amendment to the IRS proof of claim.

(3) Whether the IRS intentionally or negligently delayed in filing the proof of claim stating the amount of taxes due.

(4) The justification, if any, for the failure of the IRS to file for a time extension for the submission of further proofs of claim.

(5) Whether or not there are any other considerations which should be taken into account in assuring a just and equitable result.

*In re Miss Glamour Coat Co., Stand. Fed.Tax Rep. (CCH)* ¶ 9737 at 85,434–35.

Those principles espoused in *In re Meade Tool & Die Co.* and in *In re Miss Glamour Coat Co.* are best articulated in *In re International Horizons, Inc.* where the Eleventh Circuit, speaking through Senior Circuit Judge Nichols, stated in material part:

▪ It is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act to assure that "fraud will not prevail, that substance will not give way to form, that

technical considerations will not prevent substantial justice from being done." *Pepper v. Litton,* 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939). Thus in a bankruptcy case, amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim. *See Szatkowski v. Meade Tool & Die Co.,* 164 F.2d 228, 230 (6th Cir.1947); *In re G.L. Miller & Co.,* 45 F.2d 115 (2d Cir.1930). Still, the court must subject post bar date amendments to careful scrutiny to assure that there was no attempt to file a new claim under the guise of amendment. *In the Matter of Commonwealth Corp.,* 617 F.2d 415, 420 (5th Cir.1980). *See Wheeling Valley Coal Corp. v. Mead,* 171 F.2d 916, 920 (4th Cir.1949).

*In re International Horizons, Inc.,* 751 F.2d at 1216.

## IV

This court, as was the bankruptcy court in *In re Owens, supra,* is influenced by Bankruptcy Rule 3002(c)(1) which uneqivocally provides in material part:

(c) *Time for filing*

. . . . .

(1) On motion of the United States ..., the court may extend the time for filing of a claim by the United States.... Fed.R.Bankr.P. 3002(c)(1).

Rule 3002(c)(1) provides an agency of the United States with an option not available to other creditors.[15] The sophistication of this debtor's financial holdings, coupled with the three proofs of claim filed by the IRS within the bar date indicating an uncertainty as to the debtor's tax obligations, provided the IRS with ample evidence of the likelihood of a future claim against this debtor. Nonetheless, the IRS chose to ignore the advantages of Rule 3002(c)(1) and did not seek an extension of time. At the hearing on the trustee's motion, the attorney for the United States stated there was no reason for the IRS failure to ask for an

---

**15.** Rule 3002(c)(1) also extends to "a state, or    subdivision thereof."

extension of time. In its brief in opposition to the trustee's motion for partial summary judgment, when discussing the five (5) factors determining allowance of late-filed claims as enunciated in *In re Miss Glamour Coat Co.*, while commenting on four (4) of these factors, the United States conspicuously failed to address in any form that singular factor relating to "the justification, if any, for the government's failure to seek an extension of time for filing the claim." Clearly, the IRS should have sought an extension of time to file its claim.

Additionally, the three claims filed by the IRS within the 90–day bar date were all filed within a one-month period (November 22 through December 23, 1983). Claim No. 90 was filed almost twenty-two months after expiration of the December 27, 1983, bar date. Conceding arguendo the right of the IRS to file an amended proof of claim after the bar date, should such a claim not be filed within a reasonable amount of time? This court is not prepared to hold that the IRS has unlimited time within which to file an amended proof of claim, especially when such claim impacts other creditors so dramatically, i.e., an additional $13,383,471.26 priority claim. To conclude otherwise would essentially annul the requirement of the 90–day filing period mandated by Rule 3002(c) and make it unnecessary for the IRS to obtain an extension of time as required by Rule 3002(c)(1). Such a holding might well invite the filing of only a pro forma claim within the 90–day period, while an "amended claim" setting forth the debtor's actual liability as claimed by the IRS might then be filed at such time as the creditor, within its discretion, deems appropriate. Claim No. 90 was not filed within a reasonable period of time.

Finally, it must be observed that Claim No. 90 asserts entirely new claims against the debtor for income taxes for 1980 and 1981 totaling $9,767,890.49, including interest to petition date. Claim No. 50 asserts no income tax liability for these two years. The remaining increase in the balance of Claim No. 90, i.e., $3,615,589.96, including interest to petition date, is predicated solely upon an IRS claim of fraud by the debtor in failing to report income for these two taxable years. The fraud theory was not asserted in Claim No. 50.

In substance, Claim No. 90 is a separate and distinct claim from Claim No. 50. The court is not persuaded by the argument of the United States that Claims No. 50 and 90 arise from the same debtor-creditor relationship, are generic in origin, and that Claim No. 90 should, therefore, be allowed under the principles espoused by the Ninth Circuit in *Menick v. Hoffman.*

For reasons set forth herein, the court concludes on principles of equity that Claim No. 90 should not relate back to Claim No. 50 and is not timely filed. Claim No. 90 is, however, deemed a tardily-filed claim in the amount of $18,440,202.68,[16] and a dividend will be paid, if at all, in accordance with the distribution scheme provided in 11 U.S.C.A. § 726(a) (West 1979 & Supp.1987).

No hearing will be set on the second part of the trustee's March 25, 1986, objection seeking subordination of Claim No. 90 pending a determination of the availability of funds after payment of all claims entitled to a distribution priority higher than the IRS under § 726.

There being no genuine issue of any material fact, the trustee's motion for partial summary judgment is granted. An appropriate order will enter.

---

**16.** This amount represents the difference between Claim No. 50 ($1,903,365.39) and Claim No. 90 ($20,343,568.07).