**In re Marshall Andrew RYAN, Hazella Margarita Ryan, Debtors.**

**Bankruptcy No. 1–86–00711.**

United States Bankruptcy Court, E.D. Tennessee.

Sept. 23, 1987.

Harold L. North, Jr., of Ray & North, P.C., Chattanooga, Tenn., for debtors.

Gregory L. Nelson, Dept. of Justice, Tax Div., Washington, D.C., for the U.S.

## MEMORANDUM

RALPH H. KELLEY, Chief Judge.

While the debtors were in an earlier chapter 13 case, the Internal Revenue Service determined that they owed additional income tax for years before they filed the chapter 13 case and for years during the chapter 13 case. The debtors paid some of the additional tax under their chapter 13 plan. After they completed the plan and received a discharge, the IRS informed them that it would try to collect the remaining unpaid taxes. That led the debtors to file this chapter 13 case.

The debtors argue that the additional income tax for the years 1977–1980 was a prepetition debt that was discharged in their earlier chapter 13 case. The IRS argues that since the taxes were not assessed until after the filing of the earlier chapter 13 petition, they could not have been discharged unless the IRS in fact received payments under the plan.

The parties stipulated the facts but the court has restated them below with minor additions.

The debtors filed a chapter 13 petition in September, 1981. The IRS was not scheduled as a creditor, but it was sent notice of the case because the clerk's office routinely sent the IRS notice of all bankruptcy cases. The notice form was different from the form sent to the IRS when it was scheduled as a creditor in a chapter 13 case.

The debtors' chapter 13 plan provided for full payment in deferred cash payments of all allowed claims entitled to priority under Bankruptcy Code § 507 and of all nonpriority unsecured claims. These provisions would have covered all priority and nonpriority unsecured tax claims. The plan was confirmed in October, 1981. About two years later, while the debtors were still carrying out the confirmed plan, the IRS assessed against them 1982 income tax in the amount of $1,401.00. The IRS filed a proof of claim for this amount and it was paid under the debtors' chapter 13 plan.

In 1984, while the debtors were still carrying out the plan, the IRS assessed against them 1978 income tax in the amount of $1,397.00 and 1983 income tax in the amount of $1,469.00. The IRS did not file a proof of claim for either of these amounts and was not paid under the chapter 13 plan.

Also in 1984, the IRS notified the debtors of the following tax deficiencies (additional tax claimed to be owed):

| | |
|---|---|
| 1977 | $1,180.00 |
| 1979 | $1,758.00 |
| 1980 | $1,563.00 |
| 1981 | $1,665.00 |

The IRS did not file a proof of claim for any of these amounts and was not paid under the debtors' chapter 13 plan.

In summary, during the earlier chapter 13 case the IRS assessed and was *not* paid additional income tax for 1978 and 1983 totaling $2,866. The IRS also notified the debtors of additional tax owed for 1977–1981 but did not assess these taxes against the debtors, did not file a proof of claim, and was not paid.

The IRS determined that the additional taxes were owed by auditing the debtors' tax returns and disallowing deductions for travel and medical expenses. The debtors had filed all the tax returns on time. The IRS has not assessed any penalties for fraud or negligence.

The debtors completed the plan and received a discharge in July, 1985. The IRS later notified them that it intended to collect all the unpaid taxes.

The debtors filed another chapter 13 case on April 1, 1986. They scheduled the IRS as a priority creditor for $5,151.10, which is apparently the total of the assessed taxes for 1978 and 1983 plus interest and penalties. For some reason, they did not include the taxes for 1977–1981 despite having been notified that they were owed. These taxes should have been scheduled even though not assessed. The IRS assessed the taxes shortly after the debtors filed their chapter 13 petition even though this violated the automatic stay of Bankruptcy Code § 362(a)(6). 11 U.S.C. § 362(a)(6). The taxes as assessed reduced the 1977 tax debt to $1,023.03 to take account of payments by the debtors.

The debtors' chapter 13 plan provides for direct payment to all creditors except the IRS. The other creditors are secured by the debtors' car and home, except for an approximate $100 debt to a local department store. The plan provides for full payment in deferred cash payments of all priority claims.

The IRS filed a priority claim for $17,251.06. It adds interest and penalties totaling $8,219.06 to the taxes for 1977–1981 and 1983 totaling $9,032.00. The claim failed to take account of the payments on the 1977 taxes. The IRS amended the claim to reduce the 1977 tax and delete the interest on the 1977 tax. This left the total claim at $15,607.06.

The trustee requested a modification of the plan to increase the amount of payments because the plan was not feasible in light of the amount of the IRS's claim and the proposed payments of $25 per week. The payments were increased to $71.25 per week.

The debtors objected to the IRS's claim on the ground that most of the tax debts were discharged in their earlier chapter 13 case. That is the question now before the court.

### Discussion

The 1977–1980 taxes in question were a prepetition debt in the debtors' first chapter 13 case. The tax years had ended, and the debtors had filed their returns for 1977–1980 before they filed their chapter 13 petition in September, 1981. The taxes were a prepetition debt even though the IRS could not determine that they were owed until it did a postpetition audit of the debtors' tax returns. 11 U.S.C. §§ 507(a)(7), 502(i) & 101(4), (11); *In re Easton,* 59 B.R. 714 (Bankr.C.D.Ill.1986); *In re Overly-Hautz Co.,* 57 B.R. 932, 14 Coll.Bankr.Cas.2d 360 (Bankr.N.D.Ohio 1986); *In re Starkey,* 49 B.R. 984 (Bankr. D.Colo.1984); *In re Pennetta,* 19 B.R. 794, 8 Bankr.Ct.Dec. 1286, 6 Coll.Bankr.Cas.2d 462 (Bankr.D.Colo.1982); S. 2266, 95th Cong.2d Sess. § 346 (1978) (definition of when tax debt incurred), S.Rep. No. 1106, 95th Cong.2d Sess. 7–8 (1978) (explanation of definition); 124 Cong.Rec. H 11109 (daily ed. Sept. 28, 1978) (Rep. Edwards) (explanation of deletion of definition); 124 Cong. Rec. S.17430 (daily ed. Oct. 6, 1978) (Sen. DeConcini) (explanation of deletion of definition).[1]

In a chapter 7 liquidation case, certain taxes are specifically excepted from discharge. 11 U.S.C. § 523(a)(1) & § 727. In a chapter 13 case, however, these same taxes may be discharged. Section 1328(a) provides that the discharge after completion of a chapter 13 plan discharges all debts *provided for in the plan,* except family support debts and long-term debts not intended to be fully dealt with by the plan. 11 U.S.C. § 1328(a).

In order for a debt to be provided for in a plan, the debtor is not required to schedule it exactly. It can be scheduled in a disputed or estimated amount. There are postpetition and postconfirmation procedures for determining the exact amount, including the exact amount of tax claims. The plan itself does not have to specifically name the governmental creditor in order to provide for an unsecured tax claim. It is sufficient if the plan provides for full payment of priority unsecured claims and pay-

---

1. All legislative history materials can be found in Appendix 2 or 3 L. King, Collier on Bankruptcy (15th ed. 1987).

ment of some percentage on nonpriority unsecured claims. The amounts and classes of the claims will be determined from the proofs of claims that are filed.

■ In summary, if a governmental unit is scheduled as a creditor holding an unsecured tax claim in an estimated or disputed amount, the claim is effectively provided for in the plan, since the plan will always provide for full payment of priority claims and will make some provision for all general unsecured claims. 11 U.S.C. §§ 1322(a)(2) & 1325(a)(1), (4). The debt will be discharged if the debtor completes the plan.

Furthermore, the debt will be discharged if it is not paid as provided in the plan as a result of the creditor's failure to file a timely proof of claim. Discharge requires only that the debt be provided for in the plan and the debtor complete the plan. Actual payment of the debt as provided in the plan depends on the filing of a proof of claim, which is the creditor's obligation.

This was what happened to the IRS's tax claim in *In re Richards*, 50 B.R. 339 (E.D. Tenn.1985); accord *In re Goodwin*, 58 B.R. 75 (Bankr.D.Me.1986). The debt was provided for in the plan as a priority or general unsecured claim or both, but the IRS did not receive payments because it did not file a timely proof of claim. The debtors completed the plan and received a discharge. When the IRS tried to collect the tax debt later, the debtors brought suit. This court held that the tax debt had been discharged and the district court affirmed.

The IRS does not contend that *Richards* was entirely a wrong decision. The IRS in effect argues that *Richards* only applies to taxes that the IRS already knows are owed when the debtor files a chapter 13 petition.

In a chapter 7 liquidation case, if the IRS wants to receive payment from the bankruptcy estate, it must file a timely proof of claim. This rule applies to a claim for prepetition taxes that the IRS has not assessed before filing of the chapter 7 petition. The IRS is forced to do an audit in time to file a proof of claim *if* it wants to share in the assets of the bankruptcy estate. For many years the law has given the government, and only the government, the specific right to an extension of time to file a proof of claim, so that it can complete an audit rather than file an erroneous claim. 11 U.S.C. § 93(n) (1978); Bankr. Rule 302 (1982); 3 L. King, Collier on Bankruptcy § 57.30 (14th ed. 1977); Bankr. Rule 3002(c); *In re Butcher*, 74 B.R. 211, 16 Bankr.Ct.Dec. 47 (Bankr.E.D.Tenn. 1987).

Of course, in a chapter 7 case the failure to file a proof of claim may be less costly than in a chapter 13 case, depending on the extent to which the tax debt is nondischargeable and on whether the assets of the bankruptcy estate are sufficient to produce a payment on the tax claim. 11 U.S.C. § 523(a)(1). The IRS argues that chapter 13, unlike chapter 7, does not compel it to determine what unassessed prepetition tax debts are owed so that they can be dealt with like all other prepetition debts.

The predecessor to present chapter 13 of the Bankruptcy Code was chapter XIII of the Bankruptcy Act. Section 680 of chapter XIII provided that the government had one year after filing of a chapter XIII petition to assess prepetition taxes. If the taxes were assessed within the year *and* after confirmation of the chapter XIII plan, the government could accept payment under the plan or it could collect directly from the debtor after he completed the plan and received a discharge. In other words, prepetition tax debts assessed after confirmation of the chapter XIII plan and within a year after filing of the chapter XIII petition could be discharged only to the extent the government accepted payment under the plan. 11 U.S.C. § 1080 (1978); *In re Gates*, 256 F.Supp. 1 (D.Wis.1966).

In the legislative process that led to enactment of the present chapter 13, there were two major bills that were eventually combined into the bill that became the Bankruptcy Code; the Senate bill was S.2266 and the House bill was H.R.8200. S.2266, 95th Cong.2d Sess. (1978); H.R. 8200, 95th Cong. 1st Sess. (1977).

After amendments by the Senate Finance Committee, which was interested only in

the tax aspects of the bill, S.2266 provided in proposed § 1331:

§ 1331 Special tax provision

Any tax which is nondischargeable under section 523 of this title, or any tax payable by the debtor that arises out of the taxable event that occurs after the commencement of the case, may, within limits otherwise applicable, be assessed against *and collected from the debtor,* but-

(1) the governmental unit to which such tax is owing may accept the provisions of the plan under this chapter dealing with the assumption, settlement, or payment of any such tax, and

(2) if the debtor has not completed all payments under the plan he may request that the plan be modified pursuant to other applicable sections of this chapter.

S.2266, 95th Cong.2d Sess. § 1331 (1978) (emphasis added).

The Senate Finance Committee also added to § 1328(a) a provision that taxes covered by § 1331 were not discharged by completion of a plan. This was necessary to make it clear that if the government decided to forego payment under the plan it could collect afterward. S.2266, 95th Cong.2d Sess. § 1328(a)(3) (1978); S.Rep. No. 1106 95th Cong.2d Sess. 30 (1978). For prepetition taxes not dischargeable in a chapter 7 case, this would have imposed essentially the same system as § 680 of old chapter XIII but without the time limitations.

The House bill included a § 1331 to the same effect as § 1331 of the Senate bill but only for state and local taxes and only if assessed within a year after filing of the chapter 13 petition. H.R.8200, 95th Cong. 1st Sess. § 1331 (1977).

Near the end of the legislative process, the Senate completely deleted § 1331, quoted above, and the related exception from discharge in § 1328. Section 1322(c) was amended to provide that a plan could run longer than the usual time limit in order to pay a tax debt. Finally, subsection (d) was added to § 1327:

(d) Any tax liability provided for in the plan may be assessed against the debtor by the governmental unit, but any such assessment, if not previously made under otherwise applicable law, may not be made until after the plan is confirmed and may be made only within the time limits of law otherwise applicable.

124 Cong.Rec. S14720 (daily ed. Sept. 7, 1978).

The intended effect of these amendments is far from clear. Section 1327 dealt with the effect of confirmation. Subsection (d) recognized that a plan could provide for a tax not assessed before confirmation of the plan and allowed assessment afterward. Perhaps most important is what subsection (d) did not say. Unlike proposed § 1331 or § 680 of old chapter XIII, proposed § 1327(d) did not say that the government could assess the tax *and collect it from the debtor.* This and the amendment to § 1322(c) suggest that the purpose of allowing assessment after confirmation of the plan was to require the government to collect under the plan or not at all. The court could be wrong on this point in light of Congress's explanation of the final changes in the bill.

Congress finally deleted all of the statutes that gave special treatment in a chapter 13 case to prepetition taxes because they were not assessed before filing. It deleted § 1331 from the House bill and § 1327(d) and the amendments to § 1322 from the Senate bill. It explained the deletions as follows:

Section 1331 of title 11 of the House bill and comparable provisions in sections 1322 and 1327(d) of the Senate amendment, pertaining to assessment and collection of taxes in wage-earner plans, are deleted, and the governing rule is placed in § 505(c) of the House amendment. The provisions of both bills allowing assessment and collection of taxes after confirmation of the wage-earner plan are modified to allow assessment and collection after the court fixes the fact and amount of tax liability, including administrative period taxes, regardless of whether this occurs before or after confirma-

tion of the plan. The provision of the House bill limiting the collection of taxes to those assessed before one year after the filing of the petition is eliminated, thereby leaving the period of limitations on assessment of these nondischargeable tax liabilities the usual period provided by the Internal Revenue Code.

124 Cong.Rec. H11115 & S17432 (daily ed. Sept. 28, 1978 in the House and Oct. 6, 1978 in the Senate) (Rep. Edwards and Sen. DeConcini).

By deleting the special statutes, Congress appears to have left the effect of a chapter 13 case on unassessed prepetition taxes to be determined by the general statutes dealing with claims and discharge. Congress referred to Bankruptcy Code § 505(c) as the controlling rule. 11 U.S.C. § 505(c). Subsection (a) of § 505 provides for the bankruptcy court or the tax court to determine amount of prepetition tax debts that have not been fixed before filing of the bankruptcy petition. Subsection (c) provides that once the amount is fixed the taxes may be assessed.

*Section 505(c) is not, however, an exception from the deadline for filing a proof of claim.* The first step for any government that has a claim for taxes and wants to share in the bankruptcy estate is to file a proof of claim. Section 505 may or may not come into play after the proof of claim is filed.

This does not mean that assessment under § 505(c) is meaningless if the government has failed to file a timely proof of claim. In a chapter 7 or 11 case, assessment will be important, even if the government has not filed a timely proof of claim, since a great many tax debts cannot be discharged without regard to whether the government filed a proof of claim. 11 U.S.C. §§ 523(a)(1) & 727; 124 Cong.Rec. H11110–H11111 (daily ed. Sept. 28, 1978) (Rep. Edwards).

Assessment under § 505(c) also does not deal with the question of whether a prepetition tax debt assessed during the bankruptcy case is discharged. That question is left to the general statutes on discharge and dischargeability. 11 U.S.C. §§ 523, 727,

1141, 1228 & 1328. In chapter 13 cases the general statutes do not except any prepetition tax debt from discharge after completion of the plan. The statutes allow any prepetition tax debt to be discharged by providing for it in the plan and completing the plan. Unassessed prepetition tax debts are treated like other unfixed prepetition debts. A creditor with notice of the case has to file a proof of claim in order to be paid under the plan or the debt will be discharged without payment. In this regard, Rule 3002(c) allows the government in a chapter 13 case to obtain an extension of time to file a proof of claim so that it can determine what prepetition taxes are owed before it files a proof of claim.

The only other statute which suggests that unassessed prepetition taxes are to be treated any differently from other unfixed prepetition claims is § 1305(a)(1). It provides that the government can file a late proof of claim for taxes that "become payable" after the filing of a chapter 13 petition. 11 U.S.C. § 1305(a)(1).

In *In re Hester,* this court concluded that § 1305(a)(1) together with § 1322(b)(6) adopted the rule of old chapter XIII as to taxes *incurred* after filing of a chapter 13 petition. The debtor could not compel the government to accept payment under the plan (file a proof of claim) or have the debt discharged without payment. The government could choose to collect from the debtor after discharge. *In re Hester,* 63 B.R. 607, 15 Coll.Bankr.Cas.2d 1082 (Bankr.E.D. Tenn.1986).

The Senate explained § 1305(a)(1) as applying to taxes incurred during the chapter 13 case. S.Rep. No. 989, 95 Cong.2d Sess. 140 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. Much earlier in the legislative history, the Commission on Bankruptcy Laws of the United States used "become payable" to describe taxes given special treatment in a chapter XIII case. Report of the Commission on Bankruptcy Laws of the United States, H.R.Doc. No. 137, 93d Cong. 1st Sess. Part II § 6–104 & Note 2 (1973). The proposed statute provided:

(b) Filing of Postpetition Claims. The administrator may fix a time for filing

proofs of claims against a debtor under this chapter for the following:

\* \* \* \* \* \*

(2) claims for taxes that became payable.... after filing of the petition and while the case is pending; ...

\* \* \* \* \* \*

The Commission explained this statute as follows:

Clause (2) is a revision of the first clause of § 680 of the present Act and Proposed Rule 13–305(2) but extends the authority for allowance of postpetition taxes to any that become payable while the case is pending.

The tax claims covered by the second clause of § 680 of the present Act and by Proposed Rule 13–305(1) are prepetition claims now covered by §§ 4–401 and 4–405(b).

This explanation mistakenly reverses the clauses of § 680. The second clause of § 680 went with Rule 13–305(2). The first clause of § 680 went with Rule 13–305(1).

The first clause of § 680 dealt with prepetition taxes "found to be owing" during the chapter XIII case. The court has already explained the first clause of § 680. It provided that taxes incurred prepetition and not assessed before confirmation of the chapter XIII plan, but assessed within a year after filing of the chapter XIII petition, were dischargeable only if the government accepted payment under the plan. Rule 13–305(1) allowed the government to file a proof of claim if it wanted to be paid under the plan.

The second clause of § 680 and Rule 13–305(2) provided the same treatment for taxes which might "become owing" during a chapter XIII case. "Become owing" apparently referred to taxes incurred during the case as distinguished from prepetition taxes dealt with by the first clause of § 680.

The Commission's quoted explanation said that prepetition taxes dealt with by the first clause of § 680 and Rule 13–305(1) would no longer be afforded the special treatment given by § 680. They would be dealt with under the general statutes on claims and priority. H.R.Doc. No. 137, 93d Cong. 1st Sess. Part II, §§ 4–401 & 4–405 (1973). The government would not have a year after filing of the chapter XIII petition to assess prepetition taxes and could not avoid being required to accept payment under the plan by delaying assessment until after confirmation of a plan. The government would have to find out what prepetition taxes were owed and file a proof of claim within the deadline applicable to claims generally or an extension granted by the court. The Commission obviously didn't intend taxes that "become payable" after filing of the petition to include all prepetition taxes not assessed until after filing.

The court concludes that § 1305(a)(1) did not apply to the 1977–1980 tax deficiency debts as taxes that became payable during the debtors' earlier chapter 13 case. *In re Pennetta*, 19 B.R. 794, 8 Bankr.Ct.Dec. 1286, 6 Coll.Bankr.Cas.2d 462 (Bankr.D. Colo.1982).

### *Preliminary Summary*

The prior law treated a prepetition tax debt that was not assessed until after confirmation of a chapter 13 plan essentially the same as a tax debt incurred during the chapter XIII case, subject to the requirement that the tax had to be assessed within a year after the chapter XIII petition was filed. The government was not required to file a timely proof of claim and accept payment under the plan or lose its claim against the debtor. The government could assess the tax after confirmation of the plan and collect it under the plan or from the debtor afterward. The court concludes that under the present Bankruptcy Code this is no longer the law. When the government is scheduled as a creditor and the plan provides for any prepetition tax debt for which a proof of claim is filed, the government must determine what prepetition taxes are owed and file a proof of claim within the general deadline or an extension granted by the court. Otherwise, the prepetition tax debt will be discharged *without payment* if debtor completes the plan.

The court's ruling is limited at this time to tax debts, such as the 1977–1980 debts in this case, for a tax period that ended before the year of filing of the chapter 13 petition and for which a return was due and filed by the debtors before they filed their chapter 13 petition. When a debtor already in chapter 13 files a late tax return for a prepetition tax year, the proper treatment of the prepetition tax debt is unclear. *In re Moseley*, 74 B.R. 791 (Bankr.C.D.Calif. 1987); *In re Hazel*, 68 B.R. 287 (Bankr.E. D.Mich.1986); *In re Owens*, 67 B.R. 418 (Bankr.E.D.Pa.1986).

---

The next question is whether the debtor's earlier chapter 13 plan provided for payment of the 1977–1980 tax deficiency debts even though the IRS did not determine that they were owed until during the debtor's chapter 13 case. The IRS basically argues that the debtors did not intend to deal with these debts because they did not schedule it as a creditor. Based on this, the IRS argues that it could ignore the clerk's notice of the case because not being scheduled as a creditor meant that the plan did not provide for any undiscovered prepetition tax debts.

Suppose an unsecured claim is not scheduled by the chapter 13 debtor but the creditor receives notice of the case by other means. The chapter 13 plan provides for full payment of all unsecured debts. Can the creditor simply wait until the debtor completes his plan and receives a discharge and then collect from the debtor on the ground that the debt was not discharged because it was not provided for in the chapter 13 plan? Common sense should require a creditor in this situation to inquire about the case. If he finds that his claim was not scheduled, the plan has been confirmed, and the time for filing proofs of claims has expired, he will face a difficult decision. Should he make his claim known or wait and try to collect after the chapter 13 case on the ground that the debt was not discharged because not provided for in the plan? As a practical matter, is he more likely to collect under the plan or afterward? If the creditor learns of the case

before confirmation of the plan and before the time for filing claims has expired, the court believes the creditor cannot ignore the case. It must file a timely proof of claim to avoid discharge of the debt without payment. In other words, a chapter 13 plan can provide for debts that are not scheduled if the creditor learns of the case in time to file a timely proof of claim.

Of course, the debtor's failure to schedule a debt might indicate his intent not to provide for it under the plan, but the creditor cannot assume this. The debtor may have intended to provide for all his unsecured debts but simply forgot one.

This is essentially the same result as in chapter 7 cases. The debtor's failure to schedule a debt in a chapter 7 case does not prevent discharge of the debt if the creditor by any means receives notice of the case in time to file a proof of claim or a complaint to determine dischargeability. 11 U.S.C. § 523(a)(3). Likewise, if an unscheduled creditor learns of a chapter 7 case in time to file a timely proof of claim but doesn't do so, its late-filed claim may be disallowed.

When the debtors filed their earlier chapter 13 petition, old Rules 203(g) and 13–203(d) required notice to the IRS of every chapter XIII case under the old law. The purpose was to give the IRS the opportunity to file a proof of claim. The rules came to apply to cases under chapter 13 of the Code. Failure to file a proof of claim in a chapter 13 case can have a much more serious effect on a tax debt than failure to file a claim in a case under old chapter XIII, but this did not make notice to the IRS of every chapter 13 case inconsistent with the Code. Bankruptcy Reform Act of 1978, Pub.L. No. 95–598, § 405(d), 92 Stat. 2549, 2685 (1978). The rules properly required notice to the IRS of the debtors' earlier case so that the IRS could file a proof of claim even though it was not scheduled as a creditor. The IRS should have known, and probably did know, that the notice was given so that it could file a proof of claim. The IRS's mistake was in not understanding that the law no longer protected unassessed prepetition taxes

from being provided for in a plan and discharged.

■ The debtor's plan in effect provided for any tax claim that the IRS would file. Furthermore, the debtors' actions during the plan support the conclusion that they intended to pay under the plan any claim the IRS would file. The court concludes that the debtors' earlier chapter 13 plan provided for payment of the 1977–1980 tax deficiency debts even though the IRS was not scheduled as a creditor and received notice of the case only because the rules required it. The result is that the 1977–1980 tax debts were discharged.

The Bankruptcy Rules no longer require notice to the IRS of every chapter 13 case. Bankr.Rule 2002(j). The IRS will receive notice only when it is scheduled as a creditor. The IRS is justifiably concerned with the logistical problems it will face if every chapter 13 debtor schedules it as a creditor just in case he may owe some back taxes even though he has no good reason to suspect it. The IRS would not have an easy method to separate these cases from the cases where the debtors seriously scheduled it as a creditor. The IRS would have to treat all cases alike. It would have to begin a fast audit of the debtor's prepetition returns and file a stand-by proof of claim or a motion to extend the time for filing a proof of claim. The court is of the opinion that it is not proper for a debtor to schedule the IRS as a creditor just in case he owes back taxes without good reason to believe he does. Likewise, the paranoid fear that the IRS can force anyone to pay more taxes, despite the accuracy and honesty of his returns, is not a good reason to schedule the IRS as a creditor. If the court allowed the IRS to be scheduled as a creditor for these reasons, it would have the effect of allowing notice in every chapter 13 case despite the change in the rules that was intended to do away with notice in every case.

The court suspects that many taxpayers who are only mildly on edge will not schedule the IRS as a creditor. They can probably do this without violating their oath to the schedule of debts. Why schedule the IRS in this situation and ask it to look at your returns when a wait-and-see approach could be better? If the IRS is not scheduled as a creditor and never receives notice of the case, obviously any prepetition tax debt would not be discharged because not provided for in the plan. See *Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620, 11 Bankr.Ct.Dec. 690, 10 Coll. Bankr.Cas.2d 759 (10th Cir.1984); *In re Doane*, 19 B.R. 1007, 6 Coll.Bankr.Cas.2d 1215 (W.D.Va.1982); *In re Martinez*, 51 B.R. 944 (Bankr.D.Colo.1985).

If routine scheduling of the IRS without good reason becomes a problem the court should be able to fashion appropriate remedies.

■ There remains the question of whether the 1981 and 1983 taxes were discharged. The 1983 taxes obviously were not discharged because they were incurred postpetition and come under § 1305(a)(1) and *In re Hester*. The IRS had the choice of accepting payment under the plan or collecting after the debtors completed the plan and received a discharge.

The debtors filed their chapter 13 petition in September, 1981. Arguably the 1981 taxes should be split into prepetition and postpetition portions. The court, however, is of the opinion that the 1981 taxes should be treated as postpetition taxes under § 1305(a)(1) and *In re Hester*. The court has already held that taxes which "become payable" during a case, as those words are used in § 1305(a)(1), do not include the 1977–1980 tax debts. The taxes for those years were due *and* the debtors had filed their returns for those years before they filed their chapter 13 petition in September, 1981. The IRS could have reviewed the returns and filed a timely proof of claim for the additional taxes. The 1981 taxes, however, were not due until 1982 and neither was the debtors' 1981 tax return. The Commission on Bankruptcy Laws explained taxes that "become payable" during a case as a broader category than taxes that "become owing" during a case. "Become owing" appears to mean incurred during a case. "Become payable", however, should include the 1981

**184**

taxes since neither the taxes nor the return were due until after filing of the chapter 13 petition. *In re Starkey*, 49 B.R. 984 (Bankr.D.Colo.1984). Furthermore, this is the easiest practical way to deal with income tax for the year of filing of the chapter 13 petition.

### Conclusion

The tax debts for 1977–1980 were discharged without payment because the IRS failed in the debtors' earlier chapter 13 case to file a proof of claim within the deadline or an extension granted by the court. The 1981 and 1983 tax debts were not discharged in the earlier case because they came under Bankruptcy Code § 1305(a)(1), which in effect gave the IRS the choice of collecting under the plan or directly from the debtors afterward. Judge Goetz of the Eastern District of New York recently reached the same conclusions in a case involving state taxes. *In re Rothman*, 76 B.R. 38 (Bankr.E.D.N.Y. 1987).

The court will enter an order disallowing the IRS's claim to the extent of the 1977–1980 taxes and the interest on those taxes.

This memorandum constitutes findings of fact and conclusions of law. Bankruptcy Rule 7052.