In re John M. KIKER and Wanda G. Kiker, Debtors.

John M. KIKER and Wanda G. Kiker, Movants,

v.

UNITED STATES of America acting By and Through the INTERNAL REVENUE SERVICE, Respondent.

Bankruptcy No. 83–05242A–SWC.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

July 11, 1988.

Carter L. Stout and James Cifelli, Lamberth, Bonapfel, Cifelli & Willson, P.A., Atlanta, Ga., for debtors.

Elizabeth Sullivan, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for respondent.

## ORDER

STACEY W. COTTON, Bankruptcy Judge.

Before the court is debtors' motion to reopen this Chapter 13 case, to order the United States of America ("United States") to cancel the federal tax lien filed against debtors' property and enjoin the United States from attempting to enforce discharged or disallowed claims against debtors, and for contempt, sanctions, and attorney's fees against the United States. Debtors contend that the United States has violated the permanent injunction of the discharge of 11 U.S.C. Section 524(a)(2).[1] This is a core proceeding pursuant to 28

---

1. Upon entry of the discharge, Section 524(a)(2) comes into effect and replaces the automatic stay with a permanent injunction preventing the enforcement of all discharged debts. *See Miller v. Mayer (In re Miller),* 81 B.R. 669, 672 (Bankr. M.D.Fla.1988).

U.S.C. Section 157(b)(2). *See Miller v. Mayer (In re Miller)*, 81 B.R. 669, 677 (Bankr.M.D.Fla.1988); *In re Barbour*, 77 B.R. 530, 532 (Bankr.E.D.N.C.1987).

A hearing on this matter was held on March 8, 1988 at which time the court granted debtors' unopposed motion to reopen this Chapter 13 case pursuant to 11 U.S.C. Section 350 to consider the other matters raised by the motion. The parties also announced at the hearing that they had reached a consent order providing that the tax penalty claims were discharged by prior order of this court and enjoining the United States, acting through the Internal Revenue Service, from taking any further action to enforce the claims growing out of the taxes against the debtors or their property. The consent order, which was approved by the court, provided that the remaining claims asserted against the United States were to be resolved upon a hearing on the merits.

After approval of the consent order, the only remaining issue from debtors' motion was whether contempt, sanctions, and attorney's fees should be imposed against the United States. Debtors' evidence in this regard consisted of the bankruptcy record in this case, the testimony of Carter L. Stout, debtors' attorney, at the hearing on this motion, the exhibits presented at the hearing on this motion, and the affidavit of Mr. Stout. After considering the foregoing, the court's findings and conclusions in this regard are as follows:

The debtors, John M. Kiker and Wanda G. Kiker, filed a joint Chapter 13 petition in this court on November 30, 1983. The Section 341 meeting of creditors was held on January 5, 1984 and creditors were given until April 4, 1984, ninety days therefrom, in which to file proofs of claim. On April 23, 1984, the United States, through its agent the Internal Revenue Service ("IRS"), filed an untimely proof of claim in the sum of $63,727.39 purporting to arise under the 100% penalty provisions of 26 U.S.C. Section 6672. Debtors filed an objection based on the late filing of the claim. On April 25, 1985, this court entered an order sustaining the objection and disallow-ing the claim. On October 29, 1986, debtors completed their Chapter 13 plan and were discharged pursuant to 11 U.S.C. Section 1328(a) from all debts provided for by the plan or disallowed under 11 U.S.C. Section 502.

Thereafter, the IRS commenced attempts to collect this same 100% penalty claim previously disallowed by this court. Subsequent to debtors' receiving their discharge, the IRS sent the following notices to debtors:

(1) Statements of change to account (dated March 23, 1987) (Debtors' Exhibits # 3, 4, and # 5);

(2) Notices of penalty charge (dated May 4, 1987) (Debtors' Exhibits # 1 and # 2);

(3) Notice of federal tax lien (dated September 4, 1987) (Debtors' Exhibit # 8); and

(4) IRS letter 1038 regarding amount required to release lien (dated October 19, 1987) (Debtors' Exhibit # 10).

All of these notices demanded immediate payment of the penalty and interest thereon despite disallowance of the claim and debtors' discharge.

On June 3, 1987, debtors' counsel, Carter L. Stout, furnished the IRS documentation reflecting disallowance of the tax claim and requesting that an agent contact him to resolve the dispute regarding the tax claims. Again on July 20, 1987, debtors' counsel sent the IRS a similar correspondence with documentation regarding debtor John M. Kiker's tax assessment and requesting that an agent contact him to resolve the matter. These letters were sent to the Atlanta office of the IRS. No response to either letter was received by debtors' counsel.

On September 4, 1987, the IRS directed the Clerk of the Superior Court of Fulton County, Georgia, to enter on the public records a notice of federal tax lien against the property of debtor John M. Kiker for failure to pay the 100% penalty assessment. After receiving a copy of the federal tax lien filed in the Fulton County Superior Court clerk's office, debtors' counsel attempted to contact the IRS by telephone.

A telephone clerk for the IRS advised debtors' counsel that he would be contacted within five days; however, debtors' counsel received no response and again telephoned the IRS on October 13, 1987. He was advised that an agent would contact him within three days. On October 19, 1987, debtors' counsel spoke to Michael Fullwood, an IRS agent, who stated that he would review the file and contact debtors' counsel by October 23, 1987. Debtors' counsel received no response from Mr. Fullwood or any other IRS representative.

On October 28, 1987, debtors' counsel again wrote the IRS at the address listed on the notices and also sent copies to the IRS Special Procedures Division, the United States Attorney for the Northern District of Georgia, and the Commissioner of the IRS in Washington, D.C. Debtors' counsel received a telephone message on November 3, 1987 to contact Ms. Keith with the IRS. Debtors' counsel attempted several times to reach Ms. Keith but was unsuccessful.

On November 18, 1987, debtors' counsel received a letter from the IRS that was sent to debtors which stated that the federal tax lien would be released upon payment of $15,731.37. Debtors' counsel attempted to contact the agent designated on the letter and left a request that his telephone call be returned. On December 4, 1987, debtors filed the instant motion to reopen the Chapter 13 case and for contempt and sanctions against the United States.

The testimony at the hearing, debtors' exhibits # 11 through # 17, and the affidavit of Carter L. Stout (attached to debtors' memorandum of law filed March 22, 1988) established that debtors have incurred $4,859.00 in attorney's fees and $387.71 in costs for defending against the post-discharge assertion of these tax claims.[2] As previously stated, debtors and the United States entered into a consent order providing that the penalty tax claims were discharged. At the conclusion of the hearing this court directed the parties to prepare briefs regarding debtors' right to recover their attorney's fees.

## CONCLUSIONS OF LAW

The remaining issue is whether the court should award attorney's fees to debtors and assess sanctions and hold the United States in contempt due to its conduct in this case. The attorney's fees issue first involves consideration of 28 U.S.C. Section 2412 and 26 U.S.C. Section 7430. The court also must examine 11 U.S.C. Section 105 and Bankruptcy Rule 9020 to determine whether to hold the United States in contempt and impose sanctions, including attorney's fees.

■ Debtors argue that 28 U.S.C. Section 2412, the Equal Access to Justice Act, applies and authorizes an award of attorney's fees in this case. On the other hand, the United States argues that 26 U.S.C. Section 7430 applies. The United States points out that Section 2412(e) of the Equal Access to Justice Act specifically provides that it does not apply to any proceeding to which 26 U.S.C. Section 7430 applies. Section 7430 applies to any civil proceeding brought by or against the United States in connection with the "determination, collection, or refund of any tax, interest, or penalty." The court concludes therefore that, as between these two statutes, 26 U.S.C. Section 7430 rather than 28 U.S.C. Section 2412 would apply in the present case.

Section 7430 provides for recovery of reasonable litigation costs, including attorney's fees, to the prevailing party in a civil action against the United States unless the court finds that the position of the United States was substantially justified. In making this determination, the Eleventh Circuit has held that the "position of the United States" that must be examined in deciding whether to award fees and costs to the prevailing taxpayer is the *government's in-court litigating position. Ewing and Thomas, P.A. v. Heye,* 803 F.2d 613 (11th Cir.1986). *See also Ashburn v. United*

---

**2.** James Cifelli is an attorney who was also present at the hearing on debtors' behalf. The amounts elaborated in Mr. Stout's testimony, the exhibits presented at the hearing, and the affidavit of Mr. Stout include the work that Mr. Cifelli has done in this case.

*States,* 740 F.2d 843 (11th Cir.1984) (adopting the same position in cases under 28 U.S.C. Section 2412, the Equal Access to Justice Act.)

The Eleventh Circuit in *Ewing and Thomas, P.A.* noted a decision of the First Circuit in *Kaufman v. Egger,* 758 F.2d 1 (1st Cir.1985), in which that court considered Section 7430. That court held that attorney's fees could be awarded under Section 7430 when the taxpayer was driven into court by unreasonable administrators at the IRS. *Kaufman,* 758 F.2d at 4. The First Circuit stated that its ruling was "in keeping with Congress' remedial bias in enacting this statute" because it would "frustrate the purpose" of Section 7430 if the IRS "after causing a taxpayer all kinds of bureaucratic grief at the administrative level, could escape attorney's fee liability by merely changing its tune after the initiation of a suit ... " *Id.*

The Eleventh Circuit agreed with the First Circuit that denial of attorney's fees and costs may very well be unfair in such situations; however, that court held that Section 7430, as drafted by Congress, does not allow for such an award. *Ewing and Thomas, P.A.,* 803 F.2d at 616. The court held that the position of the United States that must be examined in determining whether to award fees is the government's in-court litigating position, which commences on the filing of the complaint, or in the present case, on filing of the motion to reopen and for contempt and sanctions. Administrative action or any other action by the IRS prior thereto cannot be considered under Section 7430. *Ewing and Thomas, P.A.,* 803 F.2d at 615–16. *See also Baker v. Commissioner,* 787 F.2d 637, 641–42 (D.C.Cir.1986); *United States v. Balanced Financial Management, Inc.,* 769 F.2d 1440, 1450 (10th Cir.1985). *See contra Powell v. Commissioner,* 791 F.2d 385, 388–92 (5th Cir.1986); *Kaufman v. Egger, supra.* While the denial of attorney's fees pursuant to Section 7430 for the IRS' conduct in the administrative proceedings prior to filing of the instant motion is unfair to these debtors, this court is bound by the Eleventh Circuit's decision in *Ewing and Thomas, P.A. v. Heye.*

■ The only in-court litigating position of the United States following debtors' filing of this motion was a concession that the taxes in question were discharged in the Chapter 13 case and the ensuing consent order. Consequently, the court is unable to find that the in-court litigating position of the United States was not substantially justified. As a result, the court cannot award attorney's fees to debtors pursuant to 26 U.S.C. 7430 under the facts of this case.

Finding that 26 U.S.C. Section 7430 does not authorize an award of attorney's fees and other costs to debtors does not end the inquiry. Debtors also argue that, pursuant to 11 U.S.C. Section 105 and Bankruptcy Rule 9020, this court is authorized to find the United States in contempt and award debtors their attorney's fees for violation of the order of discharge entered on October 29, 1986, which operates as a permanent injunction against the enforcement of all discharged debts. *See* 11 U.S.C. Section 524(a)(2).

The United States Supreme Court discussed contempt in *McComb v. Jacksonville Paper Co.,* 336 U.S. 187, 69 S.Ct. 497, 93 L.Ed. 599 (1949), and stated as follows:

Civil as distinguished from criminal contempt is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance.

*McComb,* 336 U.S. at 191, 69 S.Ct. at 499. The Supreme Court went on to state that "[t]he measure of the court's power in civil contempt proceedings is determined by the requirements of full remedial relief." *McComb,* 336 U.S. at 193, 69 S.Ct. at 500.

Other courts, in finding civil contempt in the bankruptcy context, have awarded compensation to debtors. As the court stated in *In re Burrow,* 36 B.R. 960, 966 (Bankr. D.Utah 1984), "[a]ctual loss measures compensatory fines for civil contempt ... *Attorney's fees may be a part of the compensation.*" (emphasis added) (finding the IRS in civil contempt for a violation of the automatic stay and awarding debtors their attorney's fees and costs). *See also Miller*

*v. Mayer (In re Miller)*, 81 B.R. 669 (Bankr.M.D.Fla.1988) (Judge Paskay found the creditor in contempt for violation of the discharge and scheduled a separate hearing on sanctions for costs incurred by debtors, including attorney's fees); *In re Barbour*, 77 B.R. 530 (Bankr.E.D.N.C.1987) (finding the creditor in contempt for violating the discharge and imposing sanctions, including attorney's fees); *In re Conti*, 50 B.R. 142 (Bankr.E.D.Va.1985) (holding the IRS in civil contempt for violation of Section 524(a)(2) and awarding debtor her attorney's fees as sanctions).

In making a determination of whether to award sanctions for contempt, unlike the situation with 26 U.S.C. Section 7430, the court is not restricted to a consideration of the United States' *in-court litigating position*. Instead, the court can and should consider the United States' entire conduct following the granting of the discharge. To make a determination of whether to find the United States in contempt or impose other sanctions, the court must examine the United States' conduct on the basis of the discharge provision relevant herein, 11 U.S.C. Section 1328(a).

Congress enacted the Chapter 13 provisions to make this chapter more attractive to encourage debtors to pay their creditors. *See Hall v. Finance One of Georgia, Inc. (In re Hall)*, 752 F.2d 582, 590 (11th Cir. 1985). As an inducement for debtors to use Chapter 13 and thereby provide some payment to creditors, Congress gave Chapter 13 debtors a much more extensive discharge than it did in any of the other chapters of the Bankruptcy Code.[3]

The discharge of Section 1328(a) of the Bankruptcy Code applies to Chapter 13 debtors who complete their plan. That section provides as follows:

> As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided

for by the plan or disallowed under section 502 of this title, except any debt—

> (1) provided for under section 1322(b)(5) of this title; or
>
> (2) of the kind specified in section 523(a)(5) of this title.

Although certain taxes are excepted from discharge under Section 523(a)(1), such taxes are *not* excepted from discharge under Section 1328(a).

■ To be discharged under Section 1328(a), a debt must be provided for by the plan or disallowed under 11 U.S.C. Section 502. A priority tax claim, if timely filed and allowed, must be paid in full pursuant to the Chapter 13 plan. 11 U.S.C. Section 1322(a)(2). In the case at bar, debtors' plan provided for payment of priority claims, which would include the United States' priority tax claims. The United States, like any other creditor, must timely file a proof of claim or be barred from participation in the plan. However, if the debtor's plan makes provision for payment and a tax claim is not timely filed or is disallowed, such priority tax claim is discharged upon completion by debtor of all payments required to fund the plan. *In re Ryan*, 78 B.R. 175, 177 (Bankr.E.D.Tenn.1987); *United States v. Vlavianos (In re Vlavianos)*, 71 B.R. 789, 792–94 (Bankr.W.D.Va. 1986); *Hunt v. United States (In re Hunt)*, 59 B.R. 718, 720 (Bankr.D.Maine 1986); *In re Goodwin*, 58 B.R. 75, 76–77 (Bankr.D.Maine 1986); *Richards v. United States (In re Richards)*, 50 B.R. 339, 341 (E.D.Tenn.1985).

In the present case, the United States filed an untimely proof of claim that was objected to and subsequently disallowed. As a result, the tax claims, although provided for by the plan as priority claims, were not paid. Nevertheless, the tax claims were discharged because they were provided for under debtors' plan. As a result, the United States' previously elaborated efforts to pursue these same tax claims after debtors' discharge were clearly in violation of the permanent injunction discharge of 11 U.S.C. Section 524(a)(2).

---

**3.** The Section 1328(a) discharge is the most liberal discharge provision in the Bankruptcy Code and is granted only upon the successful completion of a Chapter 13 repayment plan.

The United States has conceded that its actions after entry of the discharge were in violation of the permanent injunction and has entered into a consent order admitting that the subject tax claim was discharged in the Chapter 13 case. The United States argues that its actions to collect the taxes in question arose from a legitimate dispute over the question of the scope of a Chapter 13 discharge. However, this record is devoid of any legitimate issue of dispute. The statute and the cases are clear that debts provided for by a Chapter 13 plan, as was true here with the priority tax claims, are discharged under Section 1328(a). *See In re Ryan, supra; In re Vlavianos, supra; In re Hunt, supra; In re Goodwin, supra; In re Richards, supra.* Furthermore, the United States has cited no authority in support of its position nor has the court has found any such authority.

Courts have been willing to impose contempt sanctions for violations of the permanent injunction of discharge. *See Hamilton Allied Corp. v. Kerkau Manufacturing Co. (In re Hamilton Allied Corp.),* 87 B.R. 43 (Bankr.S.D.Ohio 1988); *Wagner v. Piper Industries, Inc. (In re Wagner),* 87 B.R. 612 (Bankr.C.D.Cal.1988); *Miller v. Mayer (In re Miller),* 81 B.R. 669 (Bankr. M.D.Fla.1988); *In re Barbour,* 77 B.R. 530 (Bankr.E.D.N.C.1987). *See also Dubin v. Jakobowski (In re Stephen W. Grosse, P.C.),* 84 B.R. 377 (Bankr.E.D.Pa.1988) (violation of the automatic stay of Section 362); *Kellogg v. Chester,* 71 B.R. 36 (N.D.Texas 1987).

The United States argues that Judge Hall's decision in *Tele–Wire Supply Corp. v. Presidential Financial Corp. (In re Industrial Tool Distributors, Inc.),* 55 B.R. 746 (N.D.Ga.1985), prevents this court from entering a contempt citation in the present case; however, the court notes that the 1987 amendment to Bankruptcy Rule 9020 supersedes that decision in prescribing the procedure for contempt proceedings. *See In re Hamilton Allied Corp., supra,* at page 46 (holding that Bankruptcy Rule 9020 as amended specifically provides for contempt proceedings before a bankruptcy judge); *In re Wagner, supra,* at page 616 (following the procedure of Bankruptcy Rule 9020 as amended); *In re Miller, supra,* (applying Bankruptcy Rule 9020 as amended which became effective August 1, 1987); *Kellogg v. Chester, supra,* ("The Court is of the opinion that proposed Rule 9020 in its final form sets forth valid procedures and limitations for the exercise of civil contempt by bankruptcy courts." 71 B.R. at 39).[4] The Bankruptcy Rules are promulgated by the United States Supreme Court and approved by Congress and have the force and effect of law.

Bankruptcy Rule 9020 is entitled "Contempt Proceedings" and provides in pertinent part as follows:

Contempt committed in a case or proceeding pending before a bankruptcy judge, except when determined as provided in subdivision (a) of this rule, may be determined by the bankruptcy judge only after a hearing on notice. The notice shall be in writing, shall state the essential facts constituting the contempt charged and describe the contempt as criminal or civil and shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense. The notice may be given on the court's own initiative or on application of the United States attorney or by an attorney appointed by the court for that purpose. If the contempt charged involves disrespect to or criticism of a bankruptcy judge, that judge is disqualified from presiding at the hearing except with the consent of the person charged.

Rule 9020 was amended after the court heard argument in *Sequoia.* The court in *Sequoia* expressed no opinion regarding the validity of Bankruptcy Rule 9020. *See also In re Miller,* 81 B.R. at 678–79. Further, this court would note that Bankruptcy Rule 9020 was promulgated by the United States Supreme Court.

---

4. The Ninth Circuit in *Plastiras v. Idell (In re Sequoia Auto Brokers, Ltd.),* 827 F.2d 1281 (9th Cir.1987), held that bankruptcy judges have no inherent contempt powers because they are not Article III judges. However, as the bankruptcy court in *In re Wagner, supra,* which is bound by Ninth Circuit decisions, emphasized in a case decided after the *Sequoia* decision, Bankruptcy

The clerk shall serve forthwith a copy of the order of contempt on the entity named therein. The order shall be effective 10 days after service of the order and shall have the same force and effect as an order of contempt entered by the district court unless, within the 10 day period, the entity named therein serves and files with the clerk objections prepared in the manner provided in Rule 9033(b). If timely objections are filed, the order shall be reviewed as provided in Rule 9033.

Bankruptcy Rule 9020 thus provides that the initial decision regarding contempt should be made by the bankruptcy court.[5] As the Advisory Committee Note to the 1987 amendment emphasizes:

> Sound judicial administration requires that the initial determination of whether contempt has been committed should be made by the bankruptcy judge. If timely objections are not filed to the bankruptcy judge's order, the order has the same force and effect as an order of the district court. If objections are filed within 10 days of service of the order, the district court conducts a de novo review pursuant to (Bankruptcy) Rule 9033 and any order of contempt is entered by the district court on completion of the court's review of the bankruptcy judge's order.

Bankruptcy Rule 9020, prescribed by the United States Supreme Court, specifically makes provision for contempt proceedings to initially be heard before a bankruptcy judge. The rule then provides for service of the order on the party found in contempt. That order becomes final unless the party in contempt files objections within ten days. If objections are filed, then the district court reviews the contempt order de novo pursuant to Bankruptcy Rule 9033. The court thus concludes that it has jurisdiction to determine debtors' motion to hold the United States in civil contempt and impose appropriate sanctions, including attorney's fees. Accordingly, the court will

make a contempt determination pursuant to Bankruptcy Rule 9020.

■ In the present case, the United States admittedly filed an untimely proof of claim for taxes, which was subsequently disallowed. Further, like other creditors, they received notice that debtors had completed their plan and were discharged under Section 1328(a). As previously elaborated, that section discharges all debts provided for by the plan (as was the case with the United States' tax claims) or disallowed under 11 U.S.C. Section 502. In spite of this, the United States, acting by and through the IRS, repeatedly attempted to assess and collect these taxes from debtors after their discharge. Despite several attempts by debtors' attorney to resolve this matter, the United States continued to harass these debtors, including the filing of a federal tax lien against debtors' property. Finally, after debtors filed the instant motion, the United States admitted that the tax penalty claims were discharged and entered into a consent order. Based on the foregoing actions of the United States, acting by and through its agent the Internal Revenue Service, the court concludes that the United States willfully and knowingly violated the permanent injunction of Section 524(a)(2) and is in civil contempt of that order of discharge.

The discharge and the injunction of discharge are the key elements of a debtor's fresh start. Violations of the injunction of discharge are considered serious matters and must be redressed. As the court stated in *In re Barbour, supra,* "There is nothing more essential to a bankruptcy case than the preservation of the integrity of a debtor's discharge." 77 B.R. at 532.

The only evidence that debtors have presented with regard to actual damages sustained as a result of the violation of the discharge order is their attorney's fees and related costs incurred in the sum of $5,246.71 for the defense of their rights granted by the discharge injunction of Section 524(a)(2). The court has reviewed

---

**5.** Prior to the 1987 amendment, Bankruptcy Rule 9020 contained a provision that dealt with certification of contempt proceedings to the district court. That provision was abolished in toto by the 1987 amendment. *See In re Miller,* 81 B.R. at 678.

debtors' itemization of attorney's fees and related costs incurred in this action in view of *Norman v. Housing Authority of City of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) and *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974) and finds that it complies with the criteria for awarding attorney's fees as elaborated in those cases. The court determines that awarding debtors their attorney's fees and related costs is a sufficient and appropriate remedial sanction to be imposed in the present case. Such an award will compensate debtors in the defense of their rights granted by the discharge. Accordingly, it is

ORDERED that debtors' motion to reopen their Chapter 13 case is GRANTED, and it is

FURTHER ORDERED that the United States of America, acting by and through its agent, the Internal Revenue Service, is in civil contempt of this court's order of discharge entered on October 29, 1986, which order operates as a permanent injunction against the enforcement of all discharged debts, and it is

FURTHER ORDERED that, as a result of this contempt, debtors shall recover from the United States of America as sanctions their attorney's fees and related costs incurred in the sum of $5,246.71 for the defense of their rights granted by the discharge of 11 U.S.C. Section 1328(a) and the permanent injunction of 11 U.S.C. Section 524(a)(2), and it is

FURTHER ORDERED that the clerk's office is directed to serve a copy of this order of contempt on the United States of America, the party in contempt, in the manner prescribed by Bankruptcy Rule 7004(b)(4), the District Director of the Internal Revenue Service for this district, the debtors, and the parties' respective attorneys' of record.

IT IS SO ORDERED.