**In the Matter of Ira UNGAR and Sadye A. Ungar, Debtors.**

**Bankruptcy No. A88–09844–WHD.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Sept. 5, 1989.

---

Hoke Smith, III, Clark & Smith, P.C., Atlanta, Ga., for debtors.

Ann Reid, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

## ORDER

W. HOMER DRAKE, Jr., Bankruptcy Judge.

This matter is before the Court on Debtors' Objection to Proof of Claim of the United States for $65,531.21 in income taxes, interest and penalties. A hearing was held on June 27, 1989, and both parties submitted supplemental briefs on request of the Court. Having considered these briefs as well as the record in the case file, the Court makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

On June 1, 1981, the United States Internal Revenue Service ("IRS") assessed against Ira and Sadye Ungar ("Debtors") taxes, interest and penalties totalling $17,218.12 for the 1980 tax period, and on June 16 it filed a Notice of Federal Tax Lien for that amount. On May 31, 1982, Debtors were assessed $15,681.19 for their 1981 tax liabilities, and the IRS filed another Notice of Federal Tax Lien on June 23, 1982. On June 4, 1984, IRS assessments against Debtors totalled $6,193.17 for the 1983 tax year, but the IRS did not file a lien on that debt.

Debtors filed a Chapter 13 petition on June 24, 1984, listing the IRS as a secured creditor for the 1980 and 1981 tax liabilities, and listing the IRS as a priority creditor for the 1983 tax debt. The IRS did not file a proof of claim. In an order dated September 6, 1984, ruling on a motion for relief from stay by GMAC, another creditor in that case, this Court held that there would be no payments to any taxing authorities under the plan, after Debtors represented in court that it would deal with tax claims outside of the plan. The plan was confirmed on December 18, 1984, and on November 3, 1986, Debtors received a discharge. No payments were made to the IRS under the plan.

Debtors allege that during the course of the bankruptcy the IRS sent additional communications to Debtors regarding their tax debts. On July 27, 1984, the IRS allegedly sent a form demand for the 1983 tax debt. On July 22, 1985, it allegedly wrote to Debtors asking them to sign a consent form to post-petition assessment of additional taxes for 1983 and 1984. A letter regarding an audit of Debtors' 1983 taxes allegedly was sent on December 18, 1985, and on April 8, 1986, the IRS allegedly sent a notice of deficiency regarding audits for 1983 and 1984 tax debts. On September 29, 1986, the IRS allegedly mailed a notice of intent to levy to satisfy the outstanding 1980 and 1981 tax debts, demanding payments of $14,273.59 and 13,011.53, respectively. The IRS denies that it sent these communications, but it did assess taxes of $9,206.72 and $10,049.74 for the 1984 and 1985 tax years on June 9 and June 16, 1986.

After the discharge, the IRS continued its collection efforts. Debtors allege that the IRS sent a notice of addition of a late penalty and additional interest up to the time of the notice dated November 24, 1986. On May 4, 1987, it filed Notices of Federal Tax Liens for Debtors' tax debts of 1980, 1981, 1983, 1984, and 1985, and on August 25, 1988 it filed another Notice of Federal Tax Lien for the 1986 debt (assessed on June 1, 1987). The next day the IRS revoked a Certificate of Release of Federal Tax Lien which was filed respecting the 1980 and 1981 debts, and on August 31 it filed new Notices of Tax Liens for those years. Debtors allegedly submitted an IRS form on September 15, 1988, requesting that the tax liens be discharged (the IRS disputes this allegation), and on the next day the IRS refiled Notices of Tax Liens for the 1980 and 1981 tax debts.

Debtors filed a second Chapter 13 petition on November 14, 1988, listing the IRS as a creditor. On February 24, 1989 the IRS filed a proof of claim for the tax

liabilities of 1980, 1981, 1983, 1984, 1985, and 1986. Debtors filed an objection to the proof of claim on May 5, and the IRS responded on June 27, the same day as the hearing on the matter.

## CONCLUSIONS OF LAW

■ The first issue that this Court needs to address is whether the tax debts of 1980, 1981 and 1983 were discharged in Debtors' earlier Chapter 13 case. The debts were listed in Debtors' plan, but the IRS never filed a proof of claim nor received any payments under the plan. The IRS contends that prepetition priority tax claims must be paid in full before they can be discharged, and cites *In re Tomlan*, 88 B.R. 302 (Bankr.E.D.Wash.1988). *Tomlan* represents the minority position on the issue, however; the majority view is that the tax debt can be discharged if the proof of claim is not timely filed, as long as the debtor makes a provision for the tax debt in the Chapter 13 plan, *In re Vlavianos*, 71 B.R. 789 (Bankr.W.D.Va.1986); *In re Goodwin*, 58 B.R. 75 (Bankr.D.Me.1986); *In re Richards*, 50 B.R. 339 (E.D.Tenn. 1985). The Northern District of Georgia recently adopted the majority view in *In re Kiker*, 98 B.R. 103 (Bankr.N.D.Ga.1988). This Court agrees with this view because it follows the plain meaning of § 1328 of the Bankruptcy Code. That section indicates that, in order for a claim to be discharged, it must be provided for under the plan or else disallowed under § 502.[1] "Provided for" in this context means simply "dealt with" or "referred to," *Vlavianos*, 71 B.R. at 792; *Goodwin*, 58 B.R. at 76–77. Actual payment of the claim, even a priority tax claim, is not required for the claim to be dischargeable, *Vlavianos*, 71 B.R. at 793.[2]

■ In the case at bar, though Debtors originally had included payments of their tax debts to the IRS as a part of their Chapter 13 plan, they did not proceed under this plan. Instead, this Court's order of September 6, 1984 in the original Chapter 13 proceeding expressly provided that "the trustee shall not disburse funds to ... either of the above named taxing authorities [IRS and Georgia Department of Revenue] on their respective claims," relying on the Debtors' proposal to handle the claims out of court. Thus, the plan as approved by this Court did not actually make any provision for payments to the IRS, and an essential precondition of the discharge, found in § 1328(a) and in the above mentioned case law, was not met. As a result, the prepetition tax debts for the years 1980, 1981 and 1983 were not discharged in the first Chapter 13 proceeding.[3]

1. § 1328(a) in pertinent part provides:
   As soon as practicable after completion by the debtor of all payments under the plan, ... the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title....
   11 U.S.C. § 1328(a) (1989).

2. The *Tomlan* court defined "provided for" as "providing for full payment," looking to § 1322 for support. Section 1322(a)(2) provides that the plan shall "provide for full payments ... of all claims entitled to priority under section 507 of this title ...," 11 U.S.C. § 1322(a)(2) (1989). In response to the argument that late proofs of claim are not allowed and therefore not entitled to priority status, *Tomlan* splits semantic hairs by asserting that a claim need not be allowed to be "entitled" to priority status. *Tomlan*, 88 B.R. at 308. The Court reached for this conclusion because it felt that the claim was important enough to be granted priority status demanding 100% payment, and it should not be discharged just because the IRS was five days late, *Id.*
   In the present case however, the IRS filed no claim at all. In this circumstance, the policy of giving fresh starts to debtors seems more important. Chapter 13 provides a broader discharge than any other chapter of the Code, *Kiker*, 98 B.R. at 107; *Vlavianos*, 71 B.R. at 792; *Goodwin*, 58 B.R. at 76; *Richards*, 50 B.R. at 341, so that debtors will be encouraged to use the chapter to formulate extended plans to pay back their debts. If creditors can avoid the discharge of their debts by failing to file proofs of claim, the Chapter 13 discharge would be meaningless. This would "quickly mean death to Chapter 13," *Goodwin*, 58 B.R. at 77.

3. Debtor argues that the 1983 tax debt was never perfected by the filing of a Notice of Federal Tax Lien, and it was therefore discharged. This logic is flawed. Pursuant to 26 U.S.C. §§ 6321 and 6322, a tax lien arises at the time that the tax is assessed, *In re Miller*, 98 B.R. 110, 112 (Bankr.N.D.Ga.1989); the filing of the notice of federal tax lien only perfects the lien. Because the Chapter 13 plan made no provision for payment of any of the tax debts, none of the debts were discharged, whether perfected or not.

The second issue is whether the IRS's alleged attempts to collect tax debts after the filing of the first Chapter 13 petition violated the automatic stay. Section 362 of the Bankruptcy Code essentially prohibits creditors from taking affirmative actions to collect or possess property of the estate. Taking Debtors' assertions as true, however, the IRS still did not run afoul of the statute. Both parties overlooked § 362(b)(9), which specifically exempts from the stay the issuance of notices of tax deficiencies to the debtor by a governmental unit, 11 U.S.C. § 362(b)(9) (1989). Similarly, because creditors must be allowed to determine whether they have valid claims against debtors and the extent of those claims, post-petition tax audits and assessments do not violate the stay, *H & H Beverage Distrib. v. Dept. of Revenue of Pa.*, 850 F.2d 165 (3d Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 560, 102 L.Ed.2d 586 (1988); *In re Longley*, 66 B.R. 237 (Bankr. N.D.Oh.1986); *In re Hardy*, 39 B.R. 64 (Bankr.E.D.Pa.1984); *but cf. In re Ballentine Bros.*, 86 B.R. 198 (Bankr.D.Neb. 1988).

The correspondences of July 24, 1984 and April 8, 1986 from the IRS to Debtors can be characterized as notices which fit squarely within § 362(b)(9), and therefore were not subject to the stay. The letter of July 22, 1985 to Debtors asking them to sign a consent form for the assessment of additional 1983 and 1984 taxes can be considered as either a notice of a tax deficiency or an assessment, though the consent form was unnecessary. Though the contents of the December 18, 1985 letter are unclear, it seems to be a notice of an audit, also allowable under § 362(b)(9) and under the above mentioned case law. Finally, the June 1986 tax assessments were obviously in the nature of assessments and were therefore allowable.

The only invalid correspondence during the pendency of the Chapter 13 case was the notice of intent to levy to satisfy the 1980 and 1981 debts, dated September 29, 1986. This was more in the nature of an affirmative action to collect property, thus violating the stay. As a result, the notice was void and without effect, *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984); *Borg–Warner Acceptance Corp. v. Hall*, 685 F.2d 1306, 1308 (11th Cir.1982); *In re Joyner*, 46 B.R. 130, 135 (Bankr.M.D.Ga.1985). However, the IRS's later filing and refiling of Notices of Tax Liens for the 1980 and 1981 tax debts corrected the defect and insured that the tax liens remained perfected.

The Debtors also object to the filing of the Notices of Tax Liens on May 4, 1987; August 25, 1988; August 31, 1988; and September 16, 1988, all submitted after the November 3, 1986 discharge. According to § 362(c)(2)(C), an automatic stay terminates upon the discharge of the debtor in a bankruptcy proceeding, so that a creditor with a claim that has not been discharged may continue to pursue that claim, 11 U.S.C. § 362(c)(2)(C) (1989). Because the Notices of Federal Tax Liens, as well as the Revocation of the Certificate of Release of the Federal Tax Liens for 1980 and 1981 dated August 26, 1988, were entered after the discharge, they were not stayed. Moreover, because the liens secured debts that were not discharged under the Chapter 13 plan, they were not affected by the language in the discharge order referred to by Debtors enjoining creditors from commencing or continuing any action to collect on discharged debts.

Accordingly, it is hereby ORDERED that Debtor's Objection to the Proof of Claim of the United States is DENIED, and that the IRS's Proof of Claim in the amount of $65,531.21 shall be approved.

IT IS SO ORDERED.