In re Paul R. THIBODAUX, Debtor.

Paul R. THIBODAUX, Plaintiff,

v.

UNITED STATES of America,
INTERNAL REVENUE
SERVICE, Defendant.

Bankruptcy No. 91–08493–CMS–13.
Adv. No. 95–00440.

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

July 31, 1996.

Ted Stuckenschneider, Birmingham, AL, for Debtor.

Janet Reno, Attorney General of United States, Cynthia Lewis Steir, U.S. Dept. of Justice, Tax Division, Washington, DC, Caryl Privett, U.S. Attorneys Office, Richard O'Neal, Assistant U.S. Attorney, Richard Moran, District Director, Internal Revenue Service, Birmingham, AL, for U.S.

David P. Rogers, Birmingham, AL, Chapter 13 Standing Trustee, Northern District of Alabama, Southern Division.

## MEMORANDUM OF DECISION

C. MICHAEL STILSON, Bankruptcy Judge.

This matter came before the court on the Chapter 13 debtor, Paul R. Thibodaux's, complaint to determine dischargeability of a debt once owed the Internal Revenue Service (hereafter IRS) and for a contempt penalty against IRS for violating the discharge injunction in this case. After reviewing the documents and stipulated facts in the context of applicable law, this court finds Paul R. Thibodaux's complaint is due to be **GRANT-ED:** that the IRS claim was discharged January 20, 1993; and that IRS must compensate Thibodaux $1,510.00 in attorneys fees and expenses caused by its acts in civil contempt of that discharge injunction.

## FINDINGS OF FACT

November 19, 1991, Paul R. Thibodaux filed a Chapter 13 reorganization petition creating this case in the United States Bankruptcy Court. (Plaintiff's Exhibit 1) The debtor and his wife had just finished a Chapter 7 case (filed August 8, 1991), (BK 91-05980). The Thibodaux schedules in the Chapter 7 case listed the IRS as a creditor for $35,000.00 for 1989 and 1990 payroll taxes. Thibodaux had attempted in the liquidation to discharge tax obligations incurred through previous businesses—Computer People and/or Micro Solutions—as well as personal obligations.

On Schedule A–1 of his subsequent Chapter 13 petition, Thibodaux again listed IRS as an unsecured priority creditor for the $35,-000.00 in 1989–90 payroll taxes. (Plaintiff's Exhibit 1)

A notice of the debtor's Section 341 meeting of creditors was sent to all parties-in-interest, including IRS, on November 25, 1991. The notice advised creditors that the debtor proposed a payment plan of $750.00 per month for 60 months with a total proposed payout of $45,000.00. The plan proposed to pay all creditors 100 percent of their allowed claims.

The record shows that the IRS did not object to confirmation of Thibodaux's Chapter 13 plan. The Bankruptcy Court entered the order confirming the plan March 24, 1992, and requiring the debtor to pay the Chapter 13 trustee $765.00 per month, effective immediately. (Debtor's Exhibit 4)

The 10 days allowed for appeal of the bankruptcy court's order of confirmation by Fed.R.Bankr.P. 8002(a) expired April 3, 1992.[1] The IRS did not file a notice of

---

1. Fed.R.Bankr.P. 8002(a) provides in part:
   (a) **Ten–Day Period.** *The notice of appeal shall be filed with the clerk within 10 days of* *the date of the entry of the judgment, order or decree appealed from.* (emphasis added)

appeal before the time ran out and the order became final.

The IRS did not file a proof of claim for the 1989–90 payroll taxes in Thibodaux's Chapter 13. It did file a proof of claim for $2,086.31, a priority claim for 1990 personal income taxes and unsecured penalty. (Government Exhibit 7) This was the only claim IRS filed in BK 91–08493–CMS–13.

On January 20, 1993, the court entered an order discharging Thibodaux's personal obligation for all dischargeable prepetition debts. (Plaintiff's Exhibit 6) The discharge order was mailed to all creditors, including IRS. IRS did not file a notice of appeal in the 10 days allowed by Fed.R. of Bankr.P. 8002(a) nor did IRS file a motion for rehearing in the 10 days allowed by Fed.R.Civ.P. 59(e)[2]. That period ran out February 1, 1993 and the unappealed order became final.

Despite the discharge, IRS on April 14, 1993 assessed a $23,238.98 trust fund recovery penalty against Thibodaux for the trust fund portion of unpaid payroll taxes from his previous business, Micro Solutions, Inc., for June 30, 1989–June 30, 1990, the prepetition tax period scheduled in the debtor's Chapter 13 case.

In April or May of 1993, Thibodaux received notice that these taxes were due and to come talk to the Internal Revenue Service immediately. The debtor spoke with staff of the IRS' Birmingham, Alabama office, and advised them of the prior Chapter 7 and Chapter 13 bankruptcy cases. Thibodaux was told that IRS still expected full payment of these taxes. He got his attorney to speak with IRS and IRS staff told the attorney that Thibodaux would not be contacted further. (Government Exhibit 5)

Nevertheless, when Thibodaux contacted IRS in 1994 about his personal income taxes,

he was told the payroll tax debts were still on his record. Thibodaux again contacted his attorney who again contacted IRS. (Government Exhibit 5)

In June of 1995, IRS notified Thibodaux, by then living in Lenexa, Kansas, that his refund check for tax year 1994 had been seized to satisfy part of the purportedly unpaid withholding taxes. IRS released the refund check only after another contact by Ted Stuckenschneider, attorney for debtor. (Debtor's Exhibit A and Government Exhibit 5)

Then, the next month, July of 1995, Thibodaux received a Notice of Intent to Levy on his wages from the Internal Revenue Service, issued July 15, 1995. (Debtor's Exhibit B) The IRS did not release the intent to levy until September 18, 1995, and only after another contact by the debtor's attorney. (Debtor's Exhibit C and Government Exhibit 5)

Despite that, on September 29, 1995, Thibodaux received another notice of IRS levy, dated September 13, 1995, this time on the deposit he had on a secured credit card account. (Debtor's Exhibit D and Government Exhibit 5) Thibodaux's evidence was the credit card was necessary for the travel required in his job with a credit bureau agency, Trans Union Corporation.

> The levies on his credit card and his wages caused the Debtor great emotional distress and have damaged his relations with his employer....

AP Doc. 1, Paragraph 14.

On October 4, 1995, Thibodaux filed this adversary proceeding seeking a determination from this court that his personal liability for the taxes IRS was trying to collect had been discharged January 20, 1993. The complaint in AP 95–00440 also asked for damages for IRS' alleged repeated violations of

---

Fed.R.Bankr.P. 9006(a) provides the method of computation for time periods under the Bankruptcy Code and rules:

> ... [t]he day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until

the end of the next day which is not one of the aforementioned days.

**2.** Fed.R.Civ.P. 59 is applied in bankruptcy by Fed.R.Bankr.P. 9023. Fed.R.Civ.P. 59(e) provides:

> **Motion to Alter or Amend Judgment.** Any motion to alter or amend a judgment shall be filed no later than 10 days after entry of the judgment.

the injunction included in that discharge order.

A trial was scheduled for April 10, 1996. At that time, the parties stipulated to the admissibility of certain documents and facts not in dispute. They agreed that no witnesses would be heard.

The parties stipulated to the admissibility of Government Exhibits 1 through 7, Debtor's Exhibits A–E, and to the receipt for the debtor's airline ticket for travel to the trial from outside Alabama, where he now lives and works. The parties also agreed that attorney fees, if awarded, would be limited to $75.00 per hour for 17 hours.

The parties further stipulated that the Internal Revenue Service witnesses would testify that IRS had assessed penalties and begun collection process against Thibodaux because IRS did not believe the taxes were discharged in the debtor's Chapter 13 bankruptcy. It was also noted that every instance of collection was promptly abated after the debtor's lawyer contacted IRS.

Post-trial memoranda were also filed by both parties. After the court received the briefs, it took the dispute under submission for decision.

### CONCLUSIONS OF LAW

This court has jurisdiction over Thibodaux's Chapter 13 case under 28 U.S.C. § 1334(a) and over this dischargeability action, a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(K) and 157(b)(2)(O), under 28 U.S.C. § 1334(b). Both jurisdictions are extended to this court by the General Order of Reference from the United States District Court for the Northern District of Alabama dated July 16, 1984, as amended July 17, 1994.

### I.

*Thibodaux was discharged of personal liability for the 1989–90 payroll taxes under 11 U.S.C. § 1328 in the unappealed order of January 20, 1993.*

**IRS had the same opportunity and information to file claims and objections to confirmation as other creditors. It failed to do so.**

It is undisputed that IRS received notice of the debtor's Chapter 13 filing and of the date and time for the 341 meeting and confirmation hearing. Thibodaux had proposed payment in full of all allowed claims, and had paid·all *filed claims* in full before the court discharged him.

The debtor scheduled the IRS as a priority creditor and listed a $35,000.00 payroll tax debt among the debts to be paid in the plan. IRS filed a claim for the debtor's personal income tax obligation, but filed no claim for the payroll tax liability. IRS contends it had insufficient information upon which to determine whether or not the debtor owed payroll taxes and therefore the payroll tax debt should not be discharged. A similar issue was involved in the case of *United States Internal Revenue Service v. Lee*, 184 B.R. 257 (W.D.Va.1995). In the *Lee* case, the debtor listed IRS as a creditor as to personal taxes, but did not schedule a payroll tax obligation to IRS. IRS filed a proof of claim on the income taxes but did not determine that the debtor was liable as a responsible party on the payroll taxes until after the bar date for filing claims. The District Court in *Lee* noted that the debtor was not required to alert IRS of a potential payroll tax liability. *See Lee*, 184 B.R. at 259, n. 2. It held that the payroll taxes for withholdings prior to the filing of the debtor's petition were prepetition, not postpetition, claims and therefore were discharged upon the debtor's completion of his plan. *Lee*, 184 B.R. at 260.

The same is true in this case. To excuse IRS from filing a claim for a prepetition contingent debt would be to grant it an exception not available to other similarly situated creditors in Chapter 13. IRS cannot be relieved of its obligation as a creditor merely due to its size. *In re Moseley*, 74 B.R. 791, 802 (Bankr.C.D.Cal.1987), *appeal dismissed as moot when underlying case dismissed*, 101 B.R. 608 (9th Cir. BAP 1989); and *Jones v. United States (In re Jones)*, 134 B.R. 274, 277–78 (N.D.Ill.1991).

As stated by *In re Ryan*, 78 B.R. 175, 181 (Bankr.E.D.Tenn.1987):

When the government is scheduled as a creditor, and the plan provides for any

prepetition tax debt for which a proof of claim is filed, the government must determine what prepetition taxes are owed and file a proof of claim within the general deadline or an extension granted by the court. Otherwise, the prepetition tax debt will be discharged *without payment* if debtor completes the plan.

*Ryan* also states as follows:

In summary, if a governmental unit is scheduled as a creditor holding an unsecured tax claim in an estimated or disputed amount, the claim is effectively provided for in the plan, since the plan will always provide for full payment of priority claims and will make some provision for all general unsecured claims. 11 U.S.C. §§ 1322(a)(2) & 1325(a)(1), (4). *The debt will be discharged if the debtor completes the plan.* (emphasis added)

*Ryan,* 78 B.R. at 178.

IRS' argument that somehow insufficient information from Thibodaux prevented it filing a claim is without merit. IRS had sufficient information to compute and file a claim against Thibodaux for $2,086.31 in income taxes. IRS had the debtor's name, address and Social Security number. It should have been able to compute *all* the taxes owed by the debtor from its own records and file timely proofs of claim for all amounts due.

Even though IRS now says that insufficient plan information prevented it from filing a claim, the tax agency nevertheless offered no objection prior to confirmation of the Thibodaux plan, when an objection based on insufficient information would have been appropriate.

■ Belatedly, IRS has cited three cases setting out the information required for plans. But the agency failed to note that all three cases involved creditors' *preconfirmation* objections to debtors' plans. Inadequacy of plan information provided to creditors may be a ground for an objection to confirmation, but it is not jurisdictional and does not nullify the confirmation order once it has become final.

IRS then received a copy of the confirmation order. Again, it neither requested a rehearing nor appealed the order. The confirmation order became binding upon the debtor and the Internal Revenue Service 10 days after its entry. This confirmation order became *res judicata* as to all issues decided or *which could have been decided* at the confirmation hearing. *Jones,* 134 B.R. at 278–79. The bar on new litigation includes the issue of adequacy of information provided in the proposed plan.

■ The debtor scheduled the Internal Revenue Service and provided payments in the plan to satisfy the payroll tax debt—if the claim had been filed. The claim was not filed and the debtor received a Chapter 13 discharge, which absolved him of further personal liability on the scheduled payroll tax debt.[3]

## II.

*The United States could and did waive IRS' sovereign immunity to bankruptcy process via Congressional enactment of 11 U.S.C. § 106.*

**IRS' argument that sovereign immunity protected it from liability for contempt of the Bankruptcy discharge order/injunction is incorrect.**

■ The doctrine of sovereign immunity prohibits suits against the United States, ex-

---

**3.** Priority tax claims, if timely filed and allowed, must be paid in full under a Chapter 13 plan, as provided in 11 U.S.C. § 1322(a)(2). However, if a debtor's plan makes provision for payment and the tax claim is not timely filed or is disallowed, the priority tax claim will be discharged when the Chapter 13 debtor completes payments required by the plan. *See Kiker v. United States (In re Kiker),* 98 B.R. 103, 107 (Bankr.N.D.Ga.1988); *In re Ryan,* 78 B.R. 175, 177 (Bankr.E.D.Tenn. 1987); *United States v. Vlavianos (In re Vlavianos),* 71 B.R. 789, 792–94 (Bankr.W.D.Va.1986); *In re Goodwin,* 58 B.R. 75, 76–77 (Bankr.D.Me.

1986) and *Richards v. United States (In re Richards),* 50 B.R. 339, 341 (E.D.Tenn.1985).

The discharge of an individual's personal liability for taxes is broader following a successful Chapter 13 reorganization than following Chapter 7 liquidation. As stated in *In re Ryan,* 78 B.R. at 177:

In a Chapter 7 liquidation case, certain taxes are specifically excepted from discharge. 11 U.S.C. § 523(a)(1) & 727. In a chapter 13 case, however, these same taxes may be discharged. Section 1328(a) ...

cept where the United States has specifically consented to be sued. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–36, 112 S.Ct. 1011, 1014–16, 117 L.Ed.2d 181 (1992). IRS contended it is protected from suit for violation of the Bankruptcy Court discharge order by sovereign immunity.

■ IRS correctly cites *Nordic Village* for the proposition that for the government's waiver of sovereign immunity to be effective, it must be "unequivocally expressed". *Nordic Village*, 503 U.S. at 33, 112 S.Ct. at 1014.

11 U.S.C. Section 106(a), as amended in 1994 and retroactively applied in all bankruptcy cases[4], provides an unequivocal expression of waiver:

(a) Notwithstanding an assertion of sovereign immunity, *sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:*

(1) *Sections* 105, 106, 107, 108, 303, 346, 362, 363, 364, 365, 366, 502, 503, 505, 506, 510, 522, 523, *524*, 525, 542, 543, 544, 545, 546, 547, 548, 549, 550, 551, 552, 553, 722, 724, 726, 728, 744, 749, 764, 901, 922, 926, 928, 929, 944, 1107, 1141, 1142, 1143, 1146, 1201, 1203, 1205, 1206, 1227, 1231, 1301, 1303, 1305, and 1327 of this title.

(2) The court may hear and determine any issue arising with respect to the application of such sections to governmental units. (emphasis added)

This year's *Seminole Tribe of Florida v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) may have raised a question as to whether or not Congress can waive a *state's* sovereign immunity. However, there is no question that Congress can waive the federal government's sovereign immunity. It has done so by adopting 11 U.S.C. § 106, as specifically applied to the IRS and its failure to obey a lawful order of the Bankruptcy Court.

---

4. Under Section 702 of the Bankruptcy Reform Act of 1994 (Public Law 103–394), almost all amendments included in the Act took effect only for bankruptcy cases filed on or after October 22, 1994 when President Clinton signed the Act into law.

## III.

### *IRS has repeatedly violated the injunction against collection, recovery or setoff of prepetition, discharged debts from Paul R. Thibodaux.*

**A. It is well-settled statutory law that under 11 U.S.C. § 524 a lawful discharge order of the Bankruptcy Court is an injunction against further collection, recovery or setoff of the debts discharged.**

■ 11 U.S.C. § 524 defines the protections offered to the discharged debtor by the discharge order. The statute is at the heart of the debtor's "fresh start", Congress' primary goal for the bankruptcy process.

11 U.S.C. § 524(a)(2) states:

(a) A discharge in a case under this title—

(2) operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived;

. . .

This provision applied to IRS, as it did to Thibodaux's other prepetition creditors, when the January 20, 1993 order became final on February 1, 1993.

**B. The IRS has stipulated to facts showing that on six occasions after the court entered the discharge order, IRS violated the injunction of Section 524(a)(2) by improper collection, recovery or setoff efforts.**

On six occasions after the discharge order became final in the Thibodaux case, IRS violated Section 524's discharge injunction. These instances, all of which placed IRS in contempt of a lawful order of the court, included the following:

(1) **April 14, 1993:** IRS assessed the trust fund recovery penalty against the debtor.

However, Congress chose in Section 702(b)(2)(B) to make the amended version of 11 U.S.C. § 106 applicable to *all* bankruptcy cases—filed "before, on, and after the date of enactment of this Act." That is why the current version of Section 106(a) applies to the pre–1994 Thibodaux case.

**(2) In April or May of 1993:** IRS contacted Thibodaux and demanded payment of the 1989–90 payroll taxes even after being advised of the Chapter 7 and Chapter 13 cases.

**(3) In 1994:** IRS told Thibodaux that the payroll tax debts were still on his record.

**(4) June of 1995:** IRS informed Thibodaux that his refund check for 1994 had been seized in payment of the discharged payroll taxes. The refund was released only after Thibodaux' attorney talked with IRS.

**(5) In July of 1995:** Thibodaux received a notice of intent to levy on wages in the hands of his new employer to satisfy the discharged taxes.

**(6) September 29, 1995:** Thibodaux received notice of a levy on a deposit the debtor had been required to make to secure a secured credit card needed for his work.

On each of these occasions, IRS ceased its actions after the debtor's attorney contacted the agency and advised it of the previous bankruptcy cases. The Internal Revenue Service did not deny these events occurred. In fact, they are revealed in the stipulation of facts and of documents agreed to by the parties on the trial date, April 10, 1996. **C. Thibodaux has asked a reasonable remedy for the contempt: that the IRS now let him alone about the discharged taxes; and that he be made whole by IRS' payment of his lawyer's fees for handling the contemptuous behavior and the cost of the airplane ticket that brought him back to Birmingham for a trial that never took place.**

These repeated attempts by IRS to collect discharged prepetition taxes from the debtor, despite repeated contact by Thibodaux's lawyer, warrant a finding that the Internal Revenue Service has been in civil contempt of this court's order and that Paul R. Thibodaux has been injured by these acts of contempt.

The parties have stipulated that the damages will be limited to 17 hours of attorneys

fees at $75.00 per hour for a total of $1,275.00, plus the debtor's travel expenses in the amount of $235.00.

Thibodaux seeks attorney's fees based on two bridges: 26 U.S.C. § 7430; and on the Bankruptcy Court's inherent equitable powers to enforce its own orders and its statutory powers to sanction for contempt under 11 U.S.C. § 105(a) and Fed.R.Bankr.P. 9020.

1. *Attorneys fees may not be awarded under 26 U.S.C. § 7430 since that section requires only that the IRS **litigation** posture be "substantially justified."*

■■■■ 26 U.S.C. § 7430 provides that attorney's fees may be awarded a "prevailing party" in tax litigation against the IRS. To qualify as a "prevailing party," and thus for an award of attorney's fees under this section, the taxpayer must demonstrate that IRS' position was "not substantially justified." [5]

The Eleventh Circuit Court of Appeals has held that the position which must be substantially justified is the in-court position and not the pre-litigation position. *Ewing and Thomas, P.A. v. Heye,* 803 F.2d 613, 615–16 (11th Cir.1986). *See also Matthews v. United States (In re Matthews),* 184 B.R. 594, 601 (Bankr.S.D.Ala.1995).

This court agrees that under the Eleventh Circuit's interpretation of Section 7430, the Internal Revenue Service cannot be assessed fees and costs due to their in-court litigation position.

2. *However, the court's inherent powers to redress injury from violation of its own orders and its statutory powers under 11 U.S.C. § 105(a) allows an award of Thibodaux's modest request for cost reimbursement.*

■■■■ *Kiker v. United States (In re Kiker),* 98 B.R. 103, 106 (Bankr.N.D.Ga.1988) dealt

**5.** 26 U.S.C. § 7430(c)(4) requires the following threshold element for being a "Prevailing Party":

   **(4) Prevailing party.**
   (A) In general. The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved)—
   (i) which establishes that the position of the United States *in the proceeding was not substantially justified,* ... (emphasis added)

with similar facts. As in the Thibodaux case, the bankruptcy court held attorney's fees were not available to the injured debtor under 26 U.S.C. § 7430. However, the court held IRS in civil contempt of the discharge order under the procedure set out in Fed.R.Bankr.P. 9020. It awarded the debtor $5,246.71 in attorney's fees and related costs caused by the contempt.

This court agrees with the court in *Kiker*. The Court stated that Fed.R.Bankr.P. 9020 grants the court "jurisdiction to determine debtor's motion to hold the United States in civil contempt and *impose appropriate sanctions, including attorneys fees.*" (emphasis added) *Kiker*, 98 B.R. at 109. *See also Matthews*, 184 B.R. at 599; and *In re Conti*, 50 B.R. 142, 146–47 (Bankr.E.D.Va.1995).

A bankruptcy court civil contempt ruling is proposed findings of fact and conclusions of law for at least 10 days after its entry. Rule 9020(c) provides that a bankruptcy court's order of contempt is effective 10 days after service of the order, with the full force of a United States District Court order, unless the defendant serves and files objections as prescribed under Fed.Bankr.R. 9033(b) within that 10 days. If an objection is filed, the case goes to the District Court for *de novo* review.

IRS was served with a copy of the court's order discharging Thibodaux of prepetition debt in his Chapter 13 case. This discharge order specifically enjoined creditors' attempts to collect discharged debts.

IRS chose to make its own interpretation of what was or was not discharged rather than following the procedures provided in law for asking interpretation of or challenging a properly entered federal court order. The Internal Revenue Service's basic defense is "we did not think the debt was discharged."

So IRS, by its own admission, *chose to be in contempt* of the discharge order on six separate occasions. The creditor's contempt of court required interventions by the debtor's attorney and ultimately made this lawsuit and the debtor's travel to Alabama necessary.

The United States Supreme Court in *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191, 69 S.Ct. 497, 499, 93 L.Ed. 599 (1949) held that:

> ... [T]he absence of willfulness does not relieve from civil contempt. *Civil, as distinguished from criminal contempt, is a sanction to enforce compliance with an order of the court or to compensate for loss or damages sustained by reason of non-compliance* ... since the purpose remedial, it matters not with what intent the defendant did the prohibited act. (emphasis added)

There is no evidence in the record that the Internal Revenue Service took any appropriate action to ascertain its true legal position on the discharge order—despite repeated protests from Thibodaux's attorney. Further, the court must question the sincerity of IRS' position that it did not think this debt was discharged—since the agency halted collection five times after complaints from the debtor's attorney.

IRS' conduct forced Thibodaux to hire a lawyer to defend him and eventually to file suit to force IRS to obey this court's January 20, 1993 discharge order. This court finds that damages of $1,510.00 (as stipulated by the parties) is reasonable compensation for the injury the debtor sustained because of IRS' contempt of this court's order.

## CONCLUSION

The IRS' claims against Thibodaux for pre-Chapter 13 payroll taxes were discharged with the bankruptcy court's order of January 20, 1993 because IRS failed to file a claim for the taxes. Consequently, IRS' repeated post-discharge attempts to collect, allegations to the debtor that the taxes were still owing and seizure of the debtor's tax refund comprised contempt of the Bankruptcy Court's discharge order/injunction.

Therefore, the relief Thibodaux sought in his Complaint to Determine Dischargeability and for a Finding of Contempt is due to be **GRANTED,** and the United States (IRS) is ordered to pay the debtor $1,510.00 for attorney's fees and related travel costs made necessary by the contempt.

An order consistent with these findings pursuant to Fed.R.Civ.P. 52 (as applied by Bankr.P. 7052) will be entered separately.

**DONE and ORDERED.**